(229 P.3d 1187)
No. 101,745

IN THE MATTER OF THE MARRIAGE OF JEFFREY A.
VANDENBERG, *Appellant*, and LISA VANDENBERG, *Appellee*.

Opinion filed April 30, 2010.

*Leah Gagne*, of Wichita, for appellant.

*David J. Brown*, of The Law Office of David J. Brown, LC, of Lawrence, for appellee.

Before CAPLINGER, P.J., BUSER and STANDRIDGE, JJ.

BUSER, J.: In this divorce action, Jeffrey Vandenberg appeals the trial court's orders relating to residential custody, maintenance, property division, and attorney fees. We affirm the trial court's orders.

In particular, we address a question of first impression in Kansas: May a trial court considering an initial divorce decree deny an award of maintenance to an ex-spouse solely because the ex-spouse is engaged in same-sex cohabitation? As discussed more fully below, we conclude that in the absence of an explicit provision to the contrary in a settlement agreement, in considering an award of maintenance to an ex-spouse in an initial divorce action, a trial court may not deny maintenance solely because that ex-spouse is engaged in cohabitation, including same-sex cohabitation. On the other hand, in considering an award of maintenance to an ex-spouse in an initial divorce action, a trial court may assess the nature and extent of the financial contribution an unrelated party (such as a cohabitant) makes or is capable of making in order to maintain a relationship with that ex-spouse.

## FACTUAL AND PROCEDURAL BACKGROUND

Jeffrey and Lisa Vandenberg married on December 29, 2000. During the marriage, their young son, T.V., and Lisa's teenage son from a prior marriage, R.C., lived with them. Both Jeffrey and Lisa had been married previously and had other children who did not live in their home.

During the marriage, the Vandenberg family moved several times because Jeffrey received job promotions in the aircraft industry. In 2006, the Vandenbergs moved to Cherryvale, Kansas, and Jeffrey began a management job with Cessna, for which he was paid a salary of $79,996.86 per year plus bonuses.

Lisa had a bachelor's degree in psychology and occasionally worked during the marriage, but she primarily stayed at home to care for T.V. and R.C., who had learning and behavioral difficulties. Because of a 1990 injury Lisa sustained while in the Air Force, she developed chronic neck spasms and constant back pain. Later she was diagnosed with fibromyalgia. In 2006, she was declared 70%

disabled by the Department of Veterans Affairs (VA) and was awarded a monthly disability benefit of $1,249.

In September 2007, Lisa told Jeffrey she no longer wanted to be married to him. Lisa also disclosed she was a lesbian and had previously had an extramarital affair with another woman. Although Jeffrey was devastated and angry, he wanted to salvage their marital relationship. Lisa was unsure of what she wanted, but she was resolved to leave Kansas for fear of abuse from the woman with whom she had the affair. Ultimately, Jeffrey and Lisa agreed that Lisa would travel to Colorado with T.V. to allow her time to consider her marital situation. Jeffrey and Lisa also decided that during this time R.C. would remain with Jeffrey in Kansas. In the days that followed, Jeffrey encouraged Lisa to return home to Kansas. After a few weeks, however, Lisa decided not to reconcile and resolved to remain in Colorado.

On October 25, 2007, Jeffrey filed a petition for divorce in Montgomery County and obtained an ex parte temporary order awarding him sole custody of T.V. while providing Lisa with visitation. Without advising Lisa or T.V., Jeffrey promptly drove to Colorado, picked up T.V. from school, and returned to Kansas, where he enrolled T.V. in a new school. R.C. continued to live with Jeffrey but his behavior worsened. As a result, in mid-November 2007— again without telling Lisa—Jeffrey contacted R.C.'s father who traveled to Kansas, picked up R.C., and brought his son back to Ohio.

Lisa was served with the divorce petition, filed an answer, and moved to set aside the ex parte custody order. At a hearing on January 2, 2008, the district court set aside the ex parte order and granted the parties temporary joint legal custody of T.V., with Lisa having temporary residential custody and Jeffrey provided parenting time. Lisa then returned with T.V. to Colorado.

By this time, Lisa had moved into the Colorado Springs home of another woman with whom Lisa shared living expenses and had an exclusive sexual relationship. T.V., R.C., and the woman's 17-year-old son also lived in the home.

On October 17, 2008, a bench trial was held. Jeffrey and Lisa testified at length and submitted supporting documentation de-

tailing their divergent requests regarding how the trial court should decide the issues of child custody, property division, and Lisa's request for maintenance. After taking the matter under advisement, on December 10, 2008, the trial court filed a comprehensive memorandum decision.

The trial court granted the parties joint legal custody of T.V., with Lisa having residential custody of T.V., and Jeffrey afforded specific periods of parenting time. Jeffrey was ordered to pay child support. The trial court divided the party's assets, and Lisa was awarded maintenance of $700 per month for 44 months. Finally, the trial court ordered Jeffrey to pay $2,000 for Lisa's attorney fees.

Jeffrey appeals the trial court's rulings relating to residential custody of T.V., maintenance, property division, and attorney fees.

## RESIDENTIAL CUSTODY

Jeffrey challenges the trial court's finding that it was in T.V.'s best interests for Lisa to have primary residential custody of their son.

This court will overturn a trial court's custody determination only upon an affirmative showing by the appellant that the court abused its sound judicial discretion. See *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002) (abuse-of-discretion standard); *Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467 (2009) (burden of proof on party asserting abuse of discretion). As our Supreme Court has explained, in reviewing child custody matters for abuse of discretion:

"[An appellate court's] function is not to delve into the record and engage in the emotional and analytical tug of war between two good parents over [their child]. The district court [is] in a better position to evaluate the complexities of the situation and to determine the best interests of the child[]. Unless we were to conclude that no reasonable judge would have reached the result reached below, the district court's decision must be affirmed." *In re Marriage of Bradley*, 258 Kan. 39, 45, 899 P.2d 471 (1995).

When a trial court is called upon to determine the custody or residency of a child, K.S.A. 2009 Supp. 60-1610(a)(3) requires the decision be made "in accordance with the best interests of the child." To aid in making that decision, K.S.A. 2009 Supp. 60-

1610(a)(3)(B) provides a nonexclusive list of 11 factors that, if relevant, the trial court must consider, including:

"(i) The length of time that the child has been under the actual care and control of any person other than a parent and the circumstances relating thereto;
"(ii) the desires of the child's parents as to custody or residency;
"(iii) the desires of the child as to the child's custody or residency;
"(iv) the interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests;
"(v) the child's adjustment to the child's home, school and community;
"(vi) the willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent."

In its memorandum decision, the trial court made the following findings regarding residential custody:

"[Lisa] shall have residential custody of [T.V.]. The basis for this finding is that residential custody with [Lisa] based upon the facts of this case is in the best interest of [T.V.] The Court finds that [Lisa] has been since the birth of [T.V.] the primary parent for [T.V.]. Court finds that [Lisa] because of her physical disabilities is unable to work at full-time employment and is a stay-at-home mother and is better able to be a full-time parent.

"Court finds that [Jeffrey] works long hours as a foreman at Cessna Aircraft Company in Independence, Kansas, and consistently works more than 40 hours per week and is on call for employment duties at all times. Court finds that [Jeffrey] by his actions since the parties separated has demonstrated that he does not have the willingness or ability to respect and appreciate the bond between [T.V.] and [Lisa] and has by his actions had a negative impact upon the continuing relationship between [T.V.] and [Lisa].

"Court further finds that making [Lisa] the residential parent will, because of the school schedule in Colorado Springs, promote increased parenting time for [Jeffrey] over and above parenting time that would be available for [Lisa] if [T.V.] were placed in the residential custody of [Jeffrey] in Kansas. The court finds that the Colorado school system has in place far more holidays which would provide an increased opportunity for parenting time by [Jeffrey] who resides in Kansas."

On appeal, Jeffrey contends the trial court failed to explicitly mention or consider the three factors found in K.S.A. 2009 Supp. 60-1610(a)(3)(B)(iii) through (v). Jeffrey also contends the trial court failed to consider other important circumstances, such as the reason for the end of the marriage, Lisa's "current lifestyle," the impact of Lisa's medication requirements and physical impair-

ments, and "the impact of a very disturbed teenage half sibling [R.C.] living with [T.V.] has on his well being."

Contrary to Jeffrey's argument, our review of the trial court's comments at the close of trial regarding T.V.'s best interests and the written findings made in the court's memorandum decision establish the judge was keenly aware of and considered the relevant statutory factors and other circumstances Jeffrey contends were ignored by the trial court.

For example, with regard to the statutory factor addressing T.V.'s desires as to residency (K.S.A. 2009 Supp. 60-1610[a][3][B][iii]), the trial court's comments demonstrate that it considered but did not find T.V.'s desires dispositive of the residential custody issue. Specifically, the court found from the evidence that T.V. wanted to live with both parents. Because of T.V.'s young age (9 years old), however, the court found it was unnecessary to personally speak with the couple's son.

The trial court did not explicitly refer to two statutory factors— T.V.'s interaction and interrelationship with his parents, siblings, and any other person who may significantly affect his best interests (K.S.A. 2009 Supp. 60-1610[a][3][B][iv]); or T.V.'s adjustment to his home, school, and community (K.S.A. 2009 Supp. 60-1610[a][3][B][v]). The trial court's failure to specifically mention these two statutory factors, however, does not merit reversal of the residential custody order.

Jeffrey did not object below to the trial court's failure to specifically mention these two factors or to any inadequate findings relevant to the two factors in order to allow the trial court the opportunity to correct any omissions. As a result, Jeffrey is precluded from challenging the allegedly deficient findings on appeal. See *Bradley*, 258 Kan. at 50 (objection at the trial court level is required on any grounds other than sufficiency of the evidence to preserve for appeal objections to trial court's findings made pursuant to K.S.A. 60-252 and Supreme Court Rule 165 [2009 Kan. Ct. R. Annot. 239]).

In the absence of an objection below, an appellate court ordinarily presumes the trial court found all facts necessary to support its judgment. See *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d

1251 (2009); *In re Marriage of Whipp*, 265 Kan. 500, 508-09, 962 P.2d 1058 (1998). An appellate court will consider a remand for additional findings and conclusions only when the record on review does not support application of this presumption, thereby precluding the exercise of meaningful appellate review. See *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006); *In re Estate of Cline*, 258 Kan. 196, 206, 898 P.2d 643 (1995).

In the present case, the record is sufficient for this court to conduct a meaningful review. Notwithstanding the trial court's failure to explicitly reference K.S.A. 2009 Supp. 60-1610(a)(3)(B)(iv) and (v), the trial court's statements at the close of trial, together with its written findings made in the memorandum decision, demonstrate the court considered these two factors. The testimony regarding these two factors, however, was not dispositive because it did not favor either parent.

Given the trial court's finding that T.V. wanted to reside with both parents, it is clear that T.V. had positive interactions and interrelationships with both parents. With regard to T.V.'s adjustment to home, school, and community, both parents testified that T.V. was well adjusted when he was in their respective custody. In summary, the record shows the trial court appropriately considered all the statutory factors listed in K.S.A. 2009 Supp. 60-1610(a)(3)(B). Jeffrey's assertion of error in this regard is without merit.

Jeffrey also challenges the sufficiency of the evidence to support the trial court's conclusion that residential custody with Lisa was in T.V.'s best interests.

When an appellant challenges the sufficiency of the evidence to support a trial court's findings regarding a child's best interests, this court reviews the evidence in a light most favorable to the prevailing party below to determine if the court's factual findings are supported by substantial competent evidence and whether those findings support the court's legal conclusion. *In re Marriage of Kimbrell*, 34 Kan. App. 2d 413, 420, 119 P.3d 684 (2005).

In challenging the sufficiency of the evidence to support the award of residential custody to Lisa, Jeffrey argues the trial court failed to take into consideration Lisa's lifestyle, her use of medi-

cations for chronic pain, and the negative impact of having T.V. live with R.C. Jeffrey alleges the trial court was "punishing" him for working full time, and he highlights testimony suggesting that Lisa was unable to respect the bond between Jeffrey and T.V.

Jeffrey essentially invites this court to view the evidence in a light most favorable to him, to reweigh the evidence, to pass on witness credibility, and/or to redetermine questions of fact presented to the trial court. We decline this invitation because none of these endeavors are appropriate for an appellate court reviewing a trial court's custody determination. See *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

Viewing the evidence in a light most favorable to Lisa, the record contains sufficient competent evidence to support the trial court's legal conclusion that it was in T.V.'s best interests to award Lisa residential custody.

At the outset, the evidence showed that for the first 9 years of T.V.'s life, Lisa was the boy's primary caregiver. Although he had difficulties with speech, reading, and writing, T.V. had been doing well at his Colorado Springs school. T.V. was described as enjoying school, involved in activities, and being very social. At trial, Lisa summarized her opinion regarding the advantages of T.V. residing with her in Colorado:

"[T.V.] loves his dad to death. . . .We love him to death. . . . [T.V.] loves both of us and him living with me, I think is better because I have more time. I'm on disability. [T.V.] never has to go to daycare before and after. I have time to take him to soccer and boy scouts and help him with his homework. . . .

"I don't want to stand in the way of [T.V.] and Jeff. [T.V.] has a lot of time on the Colorado [school] schedule to be able to see Jeff."

Based on the trial court's written findings, it is apparent the court was persuaded by Lisa's testimony that, given her disability and Jeffrey's employment responsibilities, she had considerably more time and ability to care for T.V. Moreover, the unique Colorado Springs school schedule provided Jeffrey with enhanced opportunities for T.V. to visit him in Kansas. Lisa's testimony also provided a basis for the trial court to conclude that she was willing to facilitate a loving relationship between T.V. and Jeffrey. Finally, the trial court's finding that Lisa had been the primary parent of T.V.

since birth was additional evidence that it was in T.V.'s best interests to continue residential custody with Lisa.

With regard to Jeffrey, the trial court raised concerns, based on statements made since the separation, that Jeffrey did not respect and appreciate the bond between T.V. and Lisa. In particular, the trial court noted that, in a prior hearing, Jeffrey had described Lisa as the devil or evil. The trial judge observed, "[W]hat concerns me about that is how that impacts on the willingness of each parent and their ability and willingness to respect and appreciate the bond between the child and the other parent."

As this court has explained, "[c]hild custody is one of the most difficult areas faced by a trial court. The paramount question for determination of custody as between the parents is what best serves the interests and welfare of the children. All other issues are subordinate thereto." *Johnson v. Stephenson*, 28 Kan. App. 2d 275, 279, 15 P.3d 359 (2000), *rev. denied* 271 Kan. 1036 (2001).

Jeffrey and Lisa presented conflicting testimony about why it would be in T.V.'s best interests if he resided with one or the other parent. Given the conflicting evidence of both parents' strengths and shortcomings, the trial court was faced with a difficult choice. We are unable to conclude that no reasonable judge would have granted Lisa residential custody. See *Rayman*, 273 Kan. at 999. We hold the trial court's award of residential custody to Lisa was not an abuse of discretion.

## MAINTENANCE

On appeal, Jeffrey states: "The issue to be decided by this court is one of first impression; can the cohabitation of two same sex adults be the basis for the denial of the award of spousal support?" Alternatively, Jeffrey argues the trial court abused its discretion when it awarded Lisa maintenance because "[t]here was clearly no need."

An appellate court generally reviews a trial court's award of maintenance for an abuse of discretion. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 483-84, 193 P.3d 504 (2008), *rev. denied* 288 Kan. 831 (2009). Nevertheless, because the trial court is required to comply with statutes authorizing payment of support and main-

tenance, where it fails to do so, this court will find reversible error. 40 Kan. App. 2d at 484.

Moreover, Jeffrey challenges the trial court's legal conclusion that it could not deny maintenance based on Lisa's same-sex cohabitation. As a result, we review this issue under a less deferential standard. See *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005) (abuse-of-discretion standards sometimes are more accurately characterized as questions of law requiring de novo review because " '[q]uestions of law are presented when an appellate court seeks to review the factors and considerations forming a district court's discretionary decision.' [Citation omitted.] . . .'A district court by definition abuses its discretion when it makes an error of law . . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.' "); see also *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009) (abuse of discretion may be found if trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards). Finally, to the extent the parties' arguments require statutory interpretation, this court exercises unlimited review over such questions of law. See *In re Marriage of Monslow*, 259 Kan. 412, 414, 912 P.2d 735 (1996).

The facts relating to the trial court's award of maintenance were essentially uncontroverted. Lisa sought maintenance of $1,381 per month for 30 months. Lisa based this request, in part, on her 70% disability determination by the VA. Given her inability to engage in full-time employment, she received disability income of $1,249 per month. In further support of her request for maintenance, Lisa also noted the "significant disparity" between her and Jeffrey's income.

Jeffrey's counsel raised the issue of same-sex cohabitation at trial during her cross-examination of Lisa. Lisa testified she was presently living with another woman in an exclusive sexual relationship. The two women lived in a home and shared the expenses of house payments, utility bills, and other household expenses. After the trial, Lisa filed a trial brief in which she argued that her same-sex cohabitation could not be considered a legal basis for the denial of maintenance.

In its memorandum decision, the trial court awarded Lisa maintenance and made the following findings:

"The Court finds that it is fair and equitable based upon the facts of this case that [Jeffrey] pay to [Lisa] the sum of $700 per month spousal maintenance starting January 1, 2009, by income withholding order. The Court has considered the present and prospective earning capacities of the parties, finds that [Lisa] has a physical disability that has a negative impact upon her ability to earn an income while [Jeffrey] has substantial income. The Court has also considered the parties['] needs and the parties['] overall financial situation in determining the amount of child support [sic] that is appropriate.

"*The Court finds that [Lisa] resides with another lady in a committed lesbian relationship and that said relationship based upon Kansas law does not permit the trial court to lawfully deny maintenance to [Lisa] for that type of cohabitation.* However, the Court does find that [Lisa] and the individual with whom she is living both contribute to the monthly expenses of the household, thus having an effect on [Lisa's] overall financial situation related to monthly living expenses. It is because of these factors that the maintenance amount payable each month by [Jeffrey] to [Lisa] is set at $700 per month." (Emphasis added.)

It is apparent the trial court concluded Lisa was engaged in same-sex cohabitation. The uncontroverted evidence showed that Lisa and her companion were having an exclusive sexual relationship, lived in the same residence with their respective children, and shared household expenses. Neither Jeffrey nor Lisa contests these factual findings on appeal.

It is also evident the trial court considered the financial effects of Lisa's "committed lesbian relationship" in the determination of maintenance. The trial court awarded significantly less maintenance to Lisa than she had requested and attributed this decision, in part, to the financial contribution that Lisa's cohabitant made to the "overall financial situation related to monthly living expenses." At oral argument before our court, Jeffrey's attorney acknowledged that, based on the language in the memorandum decision, the trial court did consider that financial contribution in awarding maintenance.

Jeffrey contends, however, the trial court would have denied maintenance outright had it not misconstrued Kansas law to prohibit the denial of maintenance based on same-sex cohabitation. He claims the only reason the trial court did not deny maintenance

was because Lisa and her companion "could not hold themselves out legally as a married couple." In this regard, Jeffrey is cognizant of case law which discusses cohabitation by a man and a woman in the context of *marital* rights and responsibilities. See *In re Marriage of Kuzanek*, 279 Kan. 156, Syl. ¶ 1, 105 P.3d 1253 (2005) ("Kansas has defined 'cohabitation' to mean living together as husband and wife and mutual assumption of those marital rights, duties, and obligations that are usually manifested by married people."). Jeffrey argues for an expansive definition of cohabitation that is not limited to a man and a woman, but includes same-sex couples, and would provide that any such cohabitation precludes maintenance.

Citing Kan. Const. Art. 15, 16 (2009 Supp.) (the Kansas' Defense of Marriage Amendment or KDOMA), Lisa counters the "fatal flaw" in Jeffrey's argument "is that in Kansas same-sex couples are denied under the state constitution any 'rights or incidents of marriage,' thus they have none of the 'marital rights, duties and obligations' referred to in" the legal definition of "cohabitation."

We begin our analysis with a brief overview of Kansas law relating to maintenance. The purpose of maintenance is to provide for the future support of the divorced spouse. The governing statute, K.S.A. 2009 Supp. 60-1610(b)(2), provides the following guidance to trial courts in the determination of whether to award maintenance: "The decree may award to either party an allowance for future support denominated as maintenance, in an amount the court finds to be fair, just and equitable under all of the circumstances." It should be noted this statute neither mentions nor excludes cohabitation.

Kansas appellate courts have instructed that many of the statutory considerations relating to the division of property in divorce actions also should be considered in the determination of maintenance. *In re Marriage of Sedbrook*, 16 Kan. App. 2d 668, 670-71, 827 P.2d 1222, *rev. denied* 251 Kan. 938 (1992). A trial court should consider: the age of the parties; their present and prospective earning capacities; the parties' needs; the time, source, and manner of acquisition of property; family ties and obligations; and the parties' overall financial situation. *Hair*, 40 Kan. App. 2d at

484; 16 Kan. App. 2d at 671. Once again, cohabitation is neither listed nor excluded as a factor to be considered by the trial court in its determination of maintenance.

Still, in some cases, cohabitation is a factor considered by trial courts in matters of maintenance. Typically, the issue of cohabitation arises when a trial court reviews an ex-spouse's motion to modify or terminate maintenance based on a provision in a property settlement agreement which was incorporated into a divorce decree. In these cases, the parties contractually agreed that maintenance would terminate upon the cohabitation of the recipient. See, *e.g.*, *Kuzanek*, 279 Kan. at 157-62; *In re Marriage of Kopac*, 30 Kan. App. 2d 735, 736, 47 P.3d 425 (2002); *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 429-32, 747 P.2d 187 (1987) (discussing the unambiguous, accepted legal meaning of "cohabitation" in construing the parties' settlement agreement). In these contexts, cohabitation was either defined by law or by the agreement of the parties who were free to define the term cohabitation as they mutually deemed appropriate.

When a property settlement agreement is incorporated into the divorce decree, the trial court not only must enforce the provisions, it lacks jurisdiction under K.S.A. 60-1610(b)(3) to "modify [maintenance] . . . except as the agreement provides or by consent of the parties." *Bair v. Bair*, 242 Kan. 629, Syl. ¶ 3, 750 P.2d 994 (1988). As a result,

" '[t]here is a distinct difference between what the court has authority under statutes to do with respect to [maintenance] . . . and what the parties may agree upon. . . . A husband and wife are competent parties to agree between themselves upon . . . payments to be made . . . . When such agreements are fairly and intelligently made . . . they are uniformly upheld by the courts. . . .' " *McKinney v. McKinney*, 152 Kan. 372, 374, 103 P.2d 793 (1940) (quoting *Petty v. Petty*, 147 Kan. 342, 352-53, 76 P.2d 850 [1938]).

Importantly, in the case before us, we are not presented with a situation where Jeffrey and Lisa entered into a property settlement agreement which the court then incorporated into the divorce decree. If Jeffrey and Lisa had negotiated such an agreement, they could have contractually provided for denial or termination of maintenance to Lisa because of her same-sex cohabitation. That,

·however, did not occur. Here, the issue of cohabitation was raised in the context of the trial court's consideration of the propriety of an initial maintenance award, without any submission of a property settlement agreement by the parties. Moreover, although the trial court refused to deny maintenance solely because of Lisa's same-sex cohabitation, the court specifically considered cohabitation as one of several factors relevant to the maintenance determination.

Under these particular circumstances, we are persuaded that *Sedbrook*, 16 Kan. App. 2d 668, provides valuable precedent to uphold the trial court's legal conclusion that it could not deny maintenance to Lisa solely because she was engaged in same-sex cohabitation.

In *Sedbrook*, our court reviewed the trial court's refusal in a divorce action to award maintenance to the ex-wife, Luanne. Similar to the present case, there was no property settlement agreement addressing maintenance submitted by the parties. The trial court found that Luanne, " 'has been continuously cohabiting with a gentleman . . . . As a result, the Court finds that this conduct makes the petitioner ineligible to receive payment of spousal maintenance.' " 16 Kan. App. 2d at 670.

Our court summarized the district court's actions:

"The trial court did not express indignation or criticize [wife's] cohabitation, but found that it alone was sufficient to deny maintenance. It appears the trial court resolved the issue of maintenance on the single factor of cohabitation and failed to conduct a realistic evaluation of the parties' circumstances, future income, and needs." 16 Kan. App. 2d at 672.

The *Sedbrook* court concluded: "A finding of cohabitation may not be equated with the conclusion the relationship has become that of wife and husband and is not, by itself, sufficient to justify denial of spousal maintenance." 16 Kan. App. 2d 668, Syl. ¶ 3. Instead, "[t]he determination of the allowance of maintenance must be based on a realistic evaluation of the parties' circumstances, future income, and needs." 16 Kan. App. 2d 668, Syl. ¶ 2; see *Hair*, 40 Kan. App. 2d at 484-85.

We see no reason why this holding from *Sedbrook* should be limited to cohabitation by persons of the opposite sex. Under *Sedbrook*, if Lisa had been cohabiting with a man, the district court's

refusal to deny maintenance *solely* on this basis would have been correct. Similarly, the district court's refusal to deny maintenance to Lisa *solely* because she was engaged in same-sex cohabitation was also faithful to *Sedbrook's* teaching.

Indeed, to deny maintenance solely on the basis of cohabitation would amount to a finding of fault. But fault "is not to be considered in determining the financial aspects of the dissolution of the marriage unless the conduct is so gross and extreme that the failure to penalize therefore would, itself, be inequitable." *Sedbrook*, 16 Kan. App. 2d 668, Syl. ¶ 1. On appeal, Jeffrey does not argue that Lisa's cohabitation was so gross and extreme that it must be penalized.

Moreover, we emphasize that, although the trial court refused Jeffrey's request to deny maintenance to Lisa solely because of her same-sex cohabitation, the trial court did consider the financial contribution made to Lisa by her companion in its maintenance determination. This ruling was in full accord with *Sedbrook*: "It is not improper for the trial court to consider the nature and extent of the financial contribution of an unrelated party, or that which he or she may be capable of assuming, in order to maintain a relationship with a spouse seeking continued maintenance from a former spouse." 16 Kan. App. 2d 668, Syl. ¶ 4.

Regardless of how Lisa's cohabitation is characterized or defined, the evidence showed that Lisa's companion, "an unrelated party," provided valuable financial support to Lisa "in order to maintain a relationship" with her. 16 Kan. App. 2d 668, Syl. ¶ 4. In order "to be fair, just and equitable under all of the circumstances," K.S.A. 2009 Supp. 60-1610(b)(2), it was incumbent on the trial court to consider this support by the cohabitant in the determination of the maintenance award.

We conclude that Jeffrey has failed to show error in the trial court's refusal to deny maintenance to Lisa solely upon a finding that she was engaged in same-sex cohabitation.

In the alternative, Jeffrey contends the trial court abused its discretion because Lisa did not establish a need for maintenance.

In its memorandum decision, the trial court stated:

"The Court has considered the present and prospective earning capacities of the parties, finds that [Lisa] has a physical disability that has a negative impact upon her ability to earn an income while [Jeffrey] has substantial income. The Court has also considered the parties['] needs and the parties['] overall financial situation in determining the amount of support that is appropriate."

As discussed earlier, the purpose of maintenance is to provide for the future support of the divorced spouse. In making the decision of whether to award maintenance, the court may consider: the age of the parties; their present and prospective earning capacities; the parties' needs; the time, source, and manner of acquisition of property; family ties and obligations; and the parties' overall financial situation. *Hair*, 40 Kan. App. 2d at 484. The amount of maintenance is based on both the needs of the party requesting it and the ability of the other party to pay support. *Hair*, 40 Kan. App. 2d at 484. Nevertheless, there are no fixed rules in determining the amount of a maintenance award. *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976).

Jeffrey makes four cursory arguments. First, Jeffrey suggests that Lisa did not need maintenance because, in addition to her VA disability benefit, Lisa was applying for disability benefits from the Social Security Administration. Jeffrey's argument overlooks the fact that Lisa had applied for and been denied Social Security benefits on other occasions. Thus, the trial court could have reasonably concluded that these prospective benefits were too speculative to factor into the consideration of maintenance.

Second, Jeffrey claims Lisa had the ability to earn income in the future. In support, he notes that Lisa testified she had worked with at-risk youth for a while when she moved to Colorado Springs but was unable to continue her employment due to pain. Jeffrey then argues: "However, [Lisa] told the court that her decisions to work or not work during the marriage were all based upon the 'situation' going on at the time. The court could only surmise what the current 'situation' was that prevented her from working."

In fact, Lisa also testified that she decided, with Jeffrey's approval, not to work during much of their marriage in order to be available to address R.C.'s behavioral difficulties and T.V.'s daycare needs. Additionally, the trial court heard ample testimony about

Lisa's physical disabilities and how they prevented her from obtaining full-time employment and adversely impacted her present and future ability to earn an income.

Third, Jeffrey complains the trial court failed to give the "right consideration" to the fact that Lisa was receiving financial assistance from her cohabitant. Jeffrey does not elaborate on what the "right consideration" would involve. However, the trial court found that Lisa's companion contributed to payment of the household's monthly expenses. The trial court also specifically found the cohabitant's contribution had "an effect on [Lisa's] overall financial situation." These findings, coupled with the amount of the trial court's award which was significantly less than Lisa's maintenance request, demonstrate the trial court appropriately considered the financial assistance provided by the cohabitant.

Finally, Jeffrey argues "[t]here was clearly no need, just a belief that [Lisa] was 'entitled' to the spousal support." This argument references Lisa's response to a question about why she was seeking maintenance. Lisa replied, "Well, because I'm entitled." Jeffrey's argument disregards the remainder of Lisa's testimony, that she needed maintenance to continue the quality of life she enjoyed while married to Jeffrey and to pay for continuing visits to a chiropractor for alleviation of pain.

In short, our independent review of the record persuades us the trial court properly considered the relevant factors and evidence in awarding maintenance. Jeffrey has failed to show the trial court's decision was arbitrary, fanciful, or unreasonable. See *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006).

## DIVISION OF PROPERTY

In a brief and inconsistent argument, Jeffrey challenges the trial court's division of property. While Jeffrey complains that some of the property division was inequitable, he also alleges error because the trial court did not value all of the personal property and, as a result, "there is no way to determine if the division of assets and debts was fair, just and equitable."

This issue is not properly before us for appellate review. First, Jeffrey did not object below to the insufficiency of the trial court's

findings regarding the specific value of certain personal property. As a result, Jeffrey has not preserved this issue for review on appeal. See *In re Marriage of Bradley*, 258 Kan. 39, 50, 899 P.2d 471 (1995).

Second, Jeffrey's challenge to the trial court's property division fails because he has not designated a record that affirmatively establishes error. See *City of Mission Hills v. Sexton*, 284 Kan. 414, 435, 160 P.3d 812 (2007) (appellant has burden to designate record sufficient to establish error). For example, although Lisa's property division proposal is in the record, Jeffrey's property division proposal is not. Jeffrey and Lisa submitted numerous other exhibits relevant to the property division which were admitted in evidence during the trial but are not in the record on appeal.

In its memorandum decision, the trial court wrote that it considered all exhibits admitted at trial in dividing the parties' property. As an appellate court, we may not speculate about the evidence upon which the district court relied in making the property division. Jeffrey had the duty to designate a record sufficient to establish his claim of error. His failure to provide an adequate record of the evidence considered by the trial court in dividing the parties' property precludes appellate review. See *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 172, 61 P.3d 687 (2003).

K.S.A. 2009 Supp. 60-1610(b) governs the trial court's division of property. Significantly, Jeffrey does not contend the trial court failed to comply with these statutory guidelines. Moreover, the trial court has broad discretion in adjusting the property rights of parties involved in a divorce action, and its exercise of that discretion will not be disturbed on appeal absent a clear showing the court abused that discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). Finally, property division in a divorce proceeding must be just and reasonable but need not be equal. *In re Marriage of Roth*, 28 Kan. App. 2d 45, 48-49, 11 P.3d 514 (2000).

The record shows the trial court itemized, valued, and divided Jeffrey and Lisa's significant assets and debts. The personal property which was not valued included "personal possessions and personal items" separately held by the couple. Notably, Jeffrey was given ownership of two older vehicles while Lisa was given own-

ership of one older vehicle. On this incomplete record, Jeffrey has not established that no reasonable person would agree with the trial court's division of property. Without such a showing, we affirm the trial court's exercise of discretion.

Finally, Lisa asked the trial court to order Jeffrey to pay her attorney fees "based upon the disparity of income and based upon the fact he is keeping the majority of the marital personal property." In its memorandum decision, the trial court ordered Jeffrey to pay $2,000 of Lisa's attorney fees "[b]ecause of the disparity in the incomes and ability to earn income between the parties."

Jeffrey claims the award of attorney fees to Lisa was an abuse of discretion. His argument consists of one sentence: "The court then goes one step further and awards [Lisa] . . . $2,000 in attorney's fees." Jeffrey cites no authority governing the trial court's power to award attorney fees or the standard this court must utilize in reviewing such an attorney fee award. See K.S.A. 2009 Supp. 60-1610(b)(4) (court may award costs and attorney fees to either party "as justice and equity require"); *In re Marriage of Patterson*, 22 Kan. App. 2d 522, 53435, 920 P.2d 450 (1996) (court has wide discretion in determining both the recipient and the amount of attorney fees); *Dunn v. Dunn*, 3 Kan. App. 2d 347, 350-51, 595 P.2d 349 (1979) (in awarding attorney fees, court is required to consider payee's needs and payor's ability to pay).

A point incidentally raised but not briefed with citations of authority to support the issue is deemed abandoned. See *In re Marriage of Cohee*, 26 Kan. App. 2d 756, Syl. ¶ 4, 994 P.2d 663 (1999). We conclude this issue has been abandoned. Even if it was properly before us, on this record we do not find an abuse of discretion in the trial court's award of attorney fees to Lisa.

Affirmed.