No. 47,188

Sandra L. McClaren, *Appellee*, v. David E. McClaren, *Appellant*.

(519 P. 2d 720)

Opinion filed March 2, 1974.

*Jack E. Dalton*, of Mangan, Dalton and Trenkle, of Dodge City, argued the cause, and *Barry K. Gunderson*, of the same firm, was with him on the brief for the appellant.

*Calvin L. McMillan*, of Kaplan and McMillan, of Wichita, argued the cause, and *Robert W. Kaplan*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This is a divorce action in which the defendant husband appeals from the judgment of divorcement, child custody and property division.

Much of the testimony offered by the parties in a three day trial was of a controverted nature. The interest of no one would be served by chronicling more than an outline of that evidence.

Sandra L. Bratcher and David L. McClaren were each reared on farms near Lewis, Kansas. Each was a member of a highly respected family in that community. David farmed with his father and upon completion of high school devoted full time to that occupation. Sandra was a Methodist, David a Jehovah's Witness. David was five years ahead of Sandra in school. The couple began dating when Sandra reached high school and continued to do so intermittently for about two years. Sandra became pregnant by David and, although Sandra was reluctant to enter into that which she considered a forced marriage, the couple was wed September 2, 1960. They now have two children, a son born April 11, 1961, and a daughter born August 19, 1963.

Sandra testified that despite her best efforts to do so she was unable to adjust to the weekly religious meetings and visitations expected by David's church and she never converted to that faith.

Difficulties based on religious differences surfaced early in the marriage. These differences, plus the fact David worked long hours in carrying on large-scale farming operations so as to limit their mutual activities, appear to have been focal points in the eventual marriage breakdown. For some time prior to the divorce Sandra acknowledged she had had adulterous relations with two different men. Sandra's adulterous acts were concealed from David and from their friends. Other evidence will be mentioned in connection with the points raised on appeal.

In her petition filed April 12, 1971, Sandra sought divorce on the ground of incompatibility. She also asked for custody of the two children, child support and property division. David cross-petitioned for divorce on the ground of adultery and for custody of both children. Thereafter resort to marriage counseling failed to effect reconciliation and trial was had upon all issues. The trial court on May 11, 1972, found each party was in equal fault for the marriage failure, that they were incompatible and each was granted a divorce from the other because of their equal fault. The court awarded custody of both children to Sandra with liberal visitation rights in David, it ordered David to pay $400.00 per month child support and to provide health and accident insurance and medical and dental expense for the children, and made a division of the parties' property. At the time of trial Sandra was working as a clerk-receptionist in the school system at Pratt, Kansas, where she had moved, and the court specifically found there was no need for an award of alimony to her.

A trial error alleged by David should be considered first. The precise point is that the trial court erred in not permitting him "to *develop* the adulterous conduct" of Sandra (our emphasis). There is no contention that evidence of Sandra's misbehavior was *excluded*. She admitted adultery with two men, one of whom she testified she intended to marry as soon as she was free to do so. Once these admissions were made the trial court expressed considerable concern over hearing further details of her extra-marital activity. The stated reason for the court's reluctance in this regard was that a record of maternal misconduct might in future years prove embarrassing and harmful to the children and that such testimony was unnecessary. Unwarranted limitation of relevant evidence in a judicial proceeding cannot be approved. Here, however, the essentials of the adulterous conduct were made known to the

trial court, there was no indication of further evidence beyond that of a cumulative nature which would have been helpful to the court in deciding the issues and we cannot say it abused sound discretion in the statements or rulings made respecting the development of this kind of evidence.

David complains the trial court erred in failing to make specific findings of fact respecting the grounds of the divorce. The court did prepare a fairly elaborate written memorandum of its decision. It did decline to make detailed findings of fact respecting the fault aspect but in its journal entry of judgment it found that the allegations of each of the parties' petitions requesting divorce were true and correct, and as heretofore stated, in addition to the finding of incompatibility, granted each a divorce for the fault of the other. We think the court sufficiently stated, both expressly and by necessary implication, the factual basis for its decision. Without going further into the matter, there was evidence of incompatibility as alleged by Sandra and adultery relied on by David, and the trial court had authority to grant a divorce to each of the parties who had proven his cause (K. S. A. 60-1606).

David asserts the trial court erred in awarding to Sandra custody of the two children in view of her admitted misconduct and the stated preference of the son to be with his father. In *Greene v. Greene,* 201 Kan. 701, 443 P. 2d 263, the mother admitted misconduct with other men and one son expressed a preference to be with his father. The mother was awarded custody of the minor children by the trial court. This court affirmed and stated the following rules:

"When the issue of custody is between parents, the paramount consideration of the court is the best interests and welfare of the children, and in the absence of abuse of sound judicial discretion, the trial court's judgment determining the issue will not be disturbed on appeal. [Citations] Although from the facts disclosed here we might not have reached the same conclusion as that of the trial court had we been determining the question initially, we are unable to say there was insufficient evidence to sustain the court's judgment, or that the record affirmatively shows there was a manifest abuse of discretion. We have only the printed page, whereas the trial court, in considering the best interests of the children, had the advantage of seeing the witnesses and parties, observing their demeanor, assessing the character of each parent and the nature and quality of their affection and feeling for the children. If, as time progresses, circumstances require a change or modification of the custody order, the trial court has continuing jurisdiction to act pursuant to K. S. A. 1965 [now 1967] Supp. 60-1610 (*a*)." (p. 704.)

Marital misconduct such as adultery is a pertinent factor to be

considered in a divorce proceeding in determining which parent should be awarded custody of the parties' children but it is not in and of itself the controlling factor.

In *Greene* this court also stated:

"A child's preference in custody matters may, of course, be considered as an aid to the court in making a proper order. [Citation] Such preference, however, is always subordinate to the over-all best interests and welfare of the child. Thus, when there are objective factors affecting the child's welfare that are contrary to his wishes, the latter must yield to the former." (p. 704.)

The trial court heard much testimony by knowledgeable persons respecting custody and its memorandum reveals careful consideration of the issue. The weight of that evidence, including the testimony of some witnesses called by David, was that Sandra, despite her indiscretions, had devoted much time and attention to the children and had provided them with good care. It is true that one psychologist recommended David be given the boy's custody, this based principally on psychological tests given to the boy and upon his expressed preference. The trial court was not bound to base its decision upon this testimony. It did consider this evidence. This expert had no factual background on the two parents nor had he made any testing of them. Another psychologist recommended that custody of the daughter be granted Sandra. The trial court expressed concern that divided custody would add to the emotional instability of the children resulting from the breakup of their home. Award of custody of the children in David would have resulted in his sister, who was in ill health, and his seventy-seven year old mother having the principal daily responsibility for looking after the children.

The trial court made no finding of unfitness on the part of Sandra. It specifically found the best interests of the children would be served by awarding her their custody. It clearly appears religious beliefs were not a factor in the findings made. Everything considered, we cannot say the trial court abused sound discretion in this respect.

Finally, David urges that in view of the support money and other expense ordered to be paid on behalf of the chilren, the property division was unfair to him and constituted an abuse of judicial discretion. He had included charts in his brief which are designed to convey the impression that the result of the various awards will leave him virtually penniless.

The trial court found David's net worth was about $10,000 at

the time of the marriage and that it was in excess of $175,000 at the time of the divorce hearing. He had been earning a substantial annual income in varying amounts, depending upon when cattle and grain were sold. There was some dispute as to valuations but the court had the benefit of the testimony of a court-appointed appraiser and it appears Sandra was awarded about one-third of the property. As indicated, no alimony was allowed. Each party was directed to pay his own attorney fees. The fact the parties were found to be in equal fault does not affect the division of property (K. S. A. 60-1606). In *Clugston v. Clugston*, 197 Kan. 180, 415 P. 2d 226, this court stated:

"As indicated, we have no rule of law, statutory or otherwise, for determining what proportion of the property is alloted to the individual parties [Citation], nor is it the prerogative of this court to divide property between husband and wife. . . ." (p. 182.)

In *St. Clair v. St. Clair*, 211 Kan. 468, 507 P. 2d 206, we stated:

"Under K. S. A. 1972 Supp. 60-1610 (*b*) the trial court is directed to divide the property of the parties in a just and reasonable manner. Thus, the subject is largely entrusted to the discretion of the trial court. . . ." (pp. 498-499.)

In *Stayton v. Stayton*, 211 Kan. 560, 506 P. 2d 1172, we defined abuse of discretion in the following:

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." (p. 562.)

We are unable to conclude that the awards made would have the effect of impoverishing David as contended. He is left with substantial property of a type wherein he has demonstrated ability to produce substantial income. The evidence reveals Sandra did her part as a homemaker while the property was being accumulated. She also had driven farm vehicles at times during harvest seasons. We cannot declare abuse of discretion in the award of property.

The judgment is affirmed.

APPROVED BY THE COURT.

FATZER, C. J., not participating.