NOT DESIGNATED FOR PUBLICATION

No. 113,366

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

DANIELLE R. MEADE,
*Appellee*,

and

ROBERT ALVA MEADE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Nemaha District Court; JOHN L. WEINGART, judge. Opinion filed December 4, 2015. Affirmed.

*Robert E. Keeshan*, of Scott, Quinlan, Willard, Barnes & Keeshan, LLC, of Topeka, for appellant.

*Rachel B. Zenger* and *Jason E. Brinegar*, of Galloway, Wiegers & Brinegar, P.A., of Marysville, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam*: This appeal involves the divorce of Danielle R. Meade and Robert Alva Meade (Bobby). Together they had two children. After Danielle filed for divorce, the situation grew contentious. The fights got petty—including the mention of used toothbrushes during property settlement discussions and rehashing high school drama. They clearly loved their children but were incapable of putting their own emotions aside to determine what was in the best interests of their two very small children, both of whom have special needs. On multiple occasions the district court admonished the parties for

1

their immature behavior and even noted that it was the only one actually considering the needs of the children. Because Danielle and Bobby were unable to agree on a custody arrangement and property settlement themselves, the district court was left to decide these issues.

After a 2-day trial, the district court awarded joint legal custody, primary residential custody with Danielle, and ordered a block parenting time schedule giving Danielle parenting time for 9 days, then Bobby for 5 days.

On appeal, Bobby argues: (1) the court abused its discretion in its final custody order and residential custody determination; (2) the court erred in determining that Danielle's move was justified; (3) the court's findings of facts and conclusions of law were insufficient, and (4) the court erred in failing to award an income tax adjustment.

Because the record reveals the district court did not err when it issued its final child custody and support order, we affirm.

Bobby and Danielle married in Centralia, Kansas, on June 16, 2007. After a brief move to Nebraska they lived in Kansas throughout the rest of their marriage. They built a home in Centralia. Danielle worked as a nurse in Seneca, Kansas, and Bobby worked as an HVAC technician. They had two children, B.R.M., born in 2012, and B.D.M., born in 2013. B.R.M. had serious physical disabilities, and B.D.M. was born prematurely and had developmental delays.

After marital troubles arose, Danielle and the children temporarily moved to Nebraska to be with her family. Bobby thought he and Danielle were working on their problems. However, on July 17, 2013, Danielle filed for divorce without Bobby's knowledge. She attached an unsworn child support worksheet. On the worksheet, Danielle indicated she had work-related child care costs of $880 a month, but she was

unemployed. She also filed a handwritten document that indicated she did not want a summons issued for Bobby.

The Nemaha County District Court issued ex parte temporary orders that same day. The order addressed custody, child support, and personal property. Bobby had parenting time every other weekend and was ordered to pay $869 in child support.

After spending a month in Kansas with Bobby and the children, Danielle and the children moved back to Nebraska on August 21, 2013, and have remained there since. On August 22, 2013, a summons to serve Bobby with divorce papers was filed.

On October 8, 2013, Bobby filed his answer and counter petition. On October 9, 2013, Bobby filed a motion to set aside the ex parte temporary orders. He argued that Danielle's child support calculations were erroneous because she was unemployed and therefore had no child care costs.

The district court modified child support and parenting time. It changed Bobby's parenting time, giving him visitation for a 5-day block every 2 weeks instead of every-other weekend visitation. It also reduced his child support obligation to $676 a month.

Because the parties could not reach an agreement on their own, the district court ordered conciliation and appointed Amanda Jacobson as the conciliator. She provided her written recommendations on February 6, 2014. In relevant part, Jacobson found both parents capable of parenting the children. Further,

> "[t]he parties will face many challenges co-parenting 100 miles apart. It is not in the best
> interest of the minor children for the parents to live 100 miles apart from one another, but
> currently that is the situation that the family is left to make the best of for [the children].
> Danielle reports that she moved to Nebraska to be close to her family. While a healthy

3

relationship between Danielle and her parents and [the children] and their maternal grandparents is important a healthy relationship with each parent is even more vital."

Jacobson recommended equal shared custody until the children went to kindergarten.

The parties fought throughout the pendency of this case, including over multiple discovery issues. Danielle claimed Bobby's anger was an issue, and therefore she recorded their phone calls without Bobby's knowledge. Danielle photographed the children's medicine each time she sent the children with Bobby and claimed he failed to give them their medicine. She also took photos of every minor bruise, mark, or scrape on the children when they returned home from time with Bobby. On September, 20, 2013, Danielle called the police after she and Bobby got into a shoving match over a phone and Bobby smashed a table. Danielle's own statement of the event acknowledged that there was "pushing and shoving from both of us." In April 2014, Danielle reported Bobby to the Kansas Department for Children and Families (DCF) for alleged physical abuse of the children, but the report came back unsubstantiated. On May 12, 2014, Danielle's mother called the police on Bobby when he was in Nebraska visiting. The police report stated "there is no crime this is a civil family issue."

The district court held multiple hearings until the case ultimately went to trial on August 27-28, 2014.

Nicole Kauk, who has a Master's degree in counseling, was a staff therapist at Nebraska Mental Health. She had worked with Danielle for approximately 6 months on regulating her emotions and handling the stress of the divorce. Kauk had never spoken to Bobby, so her opinions were based solely on Danielle's reports. She felt Danielle's parents and family provided positive support for Danielle. She was also concerned that Danielle would be isolated if forced to return to Kansas. Kauk did not support a shared custody arrangement, testifying it would not be "healthy for any child" to have a shared

4

custody arrangement. The district judge interjected, "Well, that's interesting. We've got volumes written to the contrary of that opinion by people in your field." Kauk acknowledged that was true. Kauk also acknowledged that Danielle had not always been honest with her. Nonetheless, she had taken Danielle's word at face value.

Kris Sunken worked for the Education Service Unit No. 6 in Milford, Nebraska providing special education services to the school districts in the region. She worked with children ages birth to 3 years old. She had worked with B.R.M. and B.D.M. Sunken met with Danielle every other month to discuss any concerns about the children's services.

B.R.M. received occupational, physical, and speech therapy and B.D.M. received occupational therapy. The services were paid for by the State of Nebraska. Sunken testified about B.R.M.'s and B.D.M.'s medical and developmental issues. She testified there were plans to enroll B.R.M. in a 3-year-old preschool. The parents needed to reinforce the therapy at home. She felt the children were benefitting from the services.

Sunken testified that if the children lived in Kansas every other week, they would no longer qualify for free services in Nebraska.

Sunken testified that Bobby was not invited to participate in the children's services initially. On four occasions, Bobby's attorney tried calling Sunken as Bobby's representative with regards to what was going on with the children, but Sunken never returned his call. She had a release to talk to him, but she testified her supervisor told her not to call Bobby's attorney back.

Jenna Schuerman was a preschool teacher for the Nebraska public school district in which Danielle lived. She provided special education services to children aged birth to 5 years old. She had received a referral regarding B.R.M. and B.D.M. to her agency for services from service providers in Kansas. She worked with B.R.M. If B.R.M. remained

enrolled in Nebraska services, Schuerman would be able to continue services as B.R.M. entered preschool and be her preschool teacher 4 days a week.

Matt Baumann, a deputy with the Saline County Nebraska Sheriff's Office, testified he had performed a welfare check on Danielle and the children at Danielle's home in Nebraska at Bobby's request. He stated that everything appeared fine at Danielle's home and the children were happy.

Mike Thorne, a social worker for Children's Mercy Hospitals in the Kansas City metropolitan area became involved with the family after Danielle and Bobby got into a fight at one of B.R.M.'s appointments in March 2014. Based on his position, Thorne was a mandatory reporter, meaning he had to report certain allegations to DCF if they are reported to him. Danielle had called security on Bobby after one of the children's appointments. Bobby was angry because Danielle had changed Bobby's contact information for the hospital to Nebraska and changed his cell phone number to her cell phone number. Thorne testified this incident was not sufficient to cause him to report Bobby to DCF. Then a few days later, Danielle reported additional and more serious concerns regarding Bobby. Because Danielle had not yet reported any concerns to DCF herself, Thorne had to contact DCF to report Danielle's concerns.

Jennifer Mattox, of Keystone Learning Services as part of Northeast Kansas Infant-Toddler Services was an occupational therapist, provided services for B.R.M. from June 2012 until August 2013. Mattox referred B.R.M.'s services to Nebraska. She testified that Kansas and Nebraska could not simultaneously receive funding for the same child. Her program did not work with preschool programs; instead B.R.M. would transition to the school district at 3 years old and receive an individualized education plan. She said the children always seemed to be well taken care of when she saw them.

6

Jerry K. Birdsley, of the Nemeha County Kansas Sheriff's Office, testified he had responded to the Meades' home after Danielle called the police on Bobby in September 2013. Danielle and Bobby had argued and pushed and shoved each other. Officers arrested Bobby for disorderly conduct. The State never filed charges against Bobby.

Robert Meade, Bobby's father, testified that when the children were with Bobby, Robert helped care for them. He felt both Bobby and Danielle took good care of the children.

The testimony of Amanda Jacobson, the conciliator, was substantially similar to her report on the case. She testified a healthy relationship between the children and both Bobby and Danielle was more vital than a healthy relationship between Danielle and her parents or the children and Danielle's parents. She felt it was not in the best interests of the children for Bobby and Danielle to live so far apart. She felt Danielle had made every effort to paint Bobby in a bad light. She felt both parents were capable of caring for the children.

Danielle testified at length regarding her proposed property settlement. She also said she moved to Nebraska for family support and better social services available to the children. Danielle testified she had the flexibility to work only when the children were with Bobby. She also testified about the needs of the children and the conflict during the marriage and pendency of this case. She indicated that during the marriage, she put the children to bed, gave them their medicine, and participated in their therapy and doctor appointments.

Danielle testified Bobby's sister had worked with her in Seneca. She felt it might become tough working with her after the divorce. Danielle testified she would work to keep a good relationship between Bobby and the children. However, on cross-examination, Bobby's attorney challenged the sincerity of her testimony based on her

7

actions during the case, including reporting Bobby to DCF, secretly recording their telephone calls, photographing the children and their medicine before and after every visit with Bobby, and generally trying to make Bobby look bad. Bobby's attorney successfully emphasized the shortcomings and inconsistencies in Danielle's claims of anger and abuse at the hands of Bobby. The judge also questioned Danielle at length about the services available to the children in Nebraska.

Simone McDonald, a psychotherapist with the Kanza Mental Health and Guidance Center, testified regarding her interaction with the family.

Bobby testified he had thought Danielle's move to Nebraska was temporary so they could work out their problems. Bobby said Danielle was a great mother. He indicated he was only seeking equal time, and Danielle could be the residential parent if she relocated closer to him. However, he acknowledged if the court gave him more parenting time during the week, the children would spend time in day care while he worked.

At the close of evidence, the judge recognized he had a difficult decision, and stated he "realize[d] the shortcomings of [both parents]." The court deferred ruling.

On September 4, 2014, the district court held a telephone conference to pronounce its decision.

On September 18, 2014, the district court issued its decree of divorce. It issued its journal entry on December 11, 2014, which incorporated its pronouncement from the bench from September.

In its journal entry, the district court provided extensive findings. The court acknowledged its duty to determine custody and residence based on the best interests of

the children. The court noted the factors it must consider under K.S.A. 2014 Supp. 23-3222(c) because relocation was involved. The court noted it had considered the following factors: how the move would affect the children's and Danielle's quality of life; Danielle's motives; Bobby's reasons for opposing the move; Bobby's opportunity for parenting time; how the move would impact the emotional, physical, and developmental needs of the children; and the children's opinion if the children were capable of expressing opinions. The court noted Danielle's right to travel and determined a balancing test was most appropriate, balancing Danielle's right to travel, the State's interest in the welfare of the children, and Bobby's right to maintain close association and contact with his children.

The district court found that Danielle had moved to Nebraska to be closer to the comfort and support of her family and to get away from a high conflict marriage and divorce. The court found that Danielle's reports of Bobby's anger were not untrue, but they did not support a finding that his anger was a justification for her to move to Nebraska. The court acknowledged that allowing Danielle to remain in Nebraska would "substantially increase[] the difficulties for [Bobby] in maintaining contact with the children and being involved in their lives."

The district court determined the current custody, residency, and parenting time arrangement was far from perfect, but it was in the best interests of the children. Danielle was awarded primary residency. Danielle had the children for a 9-day block, then Bobby got the children for a 5-day block. The court noted Danielle's work schedule reduced daycare time and allowed her to work as a resource implementing the children's treatment programs. If the court had extended Bobby's time by 2 days, the children would have been required to spend 2 more days in day care while he worked.

The district court ordered Bobby to pay $487 per month in child support and adopted a child support worksheet in support of this figure. Each parent was allowed to

9

claim one child as a dependent. The court determined the tax consequences were "roughly the same."

On December 24, 2014, Bobby filed a motion to alter or amend the judgment and requested additional findings. He requested the district court to reconsider its custody order. He argued Danielle had not relocated to Nebraska for a justified compelling reason, but she moved only for convenience. He argued it was not in the children's best interests to live 2 hours from their father. Bobby also argued the record reflected that Danielle was not supportive of his role and relationship with the children—she had continually fabricated accusations against him for the purpose of justifying her move. Bobby challenged the court's decision finding that Danielle's move to Nebraska was justified and then allowing her to be the primary residential parent to his detriment and that of his family's relationship with the children. He also claimed Danielle continued to record calls and failed to give him notice of appointments and therapy, contrary to the court's directive to her.

Danielle responded on January 20, 2105, claiming Bobby was "re-hashing" and "mischaracteriz[ing]" the evidence. Danielle argued the district court had clearly considered the relevant factors and properly applied the law.

The district court denied Bobby's motion and ordered each party to pay its own attorney fees.

After Danielle had failed to show up for a schedule deposition, Bobby filed a motion requesting the district court order Danielle to pay the costs associated with the deposition. The court never ruled on this motion. However, this does not affect the finality of the custody order for purposes of jurisdiction. "A decision on the merits is final for purposes of appeal even if a request or motion for attorney fees attributable to the case

has not yet been determined." *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 374, 789 P.2d 211 (1990)]

Bobby brings this appeal.

In substance, Bobby challenges the district court's final custody order, the residential custody award, and the child support order.

Various provisions of K.S.A. 2014 Supp. 23-3201 *et seq.* guide a district court's discretionary determination of a child's custody, residency, visitation, or parenting time. The paramount consideration in making such decisions is the child's welfare and best interests. See K.S.A. 2014 Supp. 23-3201. In light of the district court's unique vantage point of what is often an emotionally-charged situation, an appellate court generally will not overturn such decisions unless the court abused its discretion. See *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011). A district court abuses its discretion when its decision is premised on a factual or legal error, or when no reasonable person would agree with the district court. See *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 292, 263 P.3d 767 (2011).

Challenges to specific factual findings in support of such determinations are reviewed to assure that they are supported by substantial competent evidence and that they support the court's legal conclusions. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 704, 229 P.3d 1187 (2010).

The party asserting an abuse of discretion bears the burden of establishing such abuse. *Vorhees v. Baltazar*, 283 Kan. 389, 394, 153 P.3d 1227 (2007).

Bobby's first challenges the district court's factual findings that Danielle's move to Nebraska was justified. Because Bobby challenges this specific factual finding, we must

11

determine if the finding that Danielle's move to Nebraska was justified is supported by substantial evidence. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014).

> "'The interest of an appellate court is directed only to such evidence as supports the findings of the district court, and not to that which might tend to establish contrary findings or a different result. An appellate court must accept the evidence which is most favorable to the prevailing party and where there is substantial competent evidence in the record to sustain a judgment—this court must sustain it rather than speculate as to what other dispositions the record might support.' *Schreiner v. Schreiner*, 217 Kan. 337, 340-41, 537 P.2d 165 (1975)." *Dickison v. Dickison*, 19 Kan. App. 2d 633, 640-41, 874 P.2d 695 (1994).

We must only look to evidence that supports the district court's decision in order to determine if discretion has been abused. See *In re Marriage of Whipp*, 265 Kan. 500, 502, 962 P.2d 1058 (1998); *In re Marriage of Flipse*, No. 103,375, 2010 WL 2670879, at *3 (Kan. App. 2010) (unpublished opinion). We will not "'delve into the record and engage in the emotional and analytical tug of war between two good parents.' See *In re Marriage of Bradley*, 258 Kan. 39, 45, 889 P.2d 471 (1995)." *Flipse*, 2010 WL 2670879 at* 3.

At the pronouncement of the district court's decision, the court found that Danielle had moved,

> "because it was advantageous to her. She was able to return to the comfort and support of her parents, extended family, and long-time friends. This move took her away from a conflicting marriage. She returned to her home state and her parents' home. She was seeking a path to put her as far away physically and emotionally as she could from the last six to eight years of her life."

Although Danielle also blamed Bobby's anger as a motive for her relocation, the court found that Bobby's anger was justified: "Danielle was moving to Nebraska, taking his children away; that her parents were intrusive in their actions; that his anger was in response to her anger and that her claims of his anger are exaggerated." The court found Bobby's anger was not a justification for her move.

Danielle's deposition and trial testimony supported these findings. In her deposition, Danielle testified she relocated to Nebraska and wished to remain there because her family was there. At trial, she testified she was in Nebraska for the support of her family and was concerned that remaining at her job in Kansas with Bobby's sister might become problematic. Her father also testified he supported Danielle whenever she needed any help with the children. He testified he went on walks with the children, read to them, and took them to the fair and parades. Nicole Kauk—a counselor working with Danielle—said Danielle could be isolated if forced to return to Kansas and her family provided positive support to her in Nebraska.

This is the type of evidence a reasonable person might accept as being sufficient to support the conclusion that Danielle's move to Nebraska was justified. See *Gannon*, 298 Kan. at 1175. We affirm the finding that Danielle's move was justified.

Bobby next argues the district court placed too much weight on his affair. Bobby cites to instances in the record when the district court addressed his infidelity.

K.S.A. 2014 Supp. 23-3203 provides a nonexclusive list of factors that should guide a district court's discretionary determination of a child's custody, residency, and parenting time. Those factors include:

> "(a) Each parent's role and involvement with the minor child before and after separation;

13

"(b) the desires of the child's parents as to custody or residency;

"(c) the desires of a child of sufficient age and maturity as to the child's custody or residency;

"(d) the age of the child;

"(e) the emotional and physical needs of the child;

"(f) the interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests;

"(g) the child's adjustment to the child's home, school and community;

"(h) the willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent;

"(i) evidence of spousal abuse, either emotional or physical;

"(j) the ability of the parties to communicate, cooperate and manage parental duties;

"(k) the school activity schedule of the child;

"(l) the work schedule of the parties;

"(m) the location of the parties' residences and places of employment;

"(n) the location of the child's school;

"(o) whether a parent is subject to the registration requirements of the Kansas offender registration act, K.S.A. 22-4901 et seq., and amendments thereto, or any similar act in any other state, or under military or federal law;

"(p) whether a parent has been convicted of abuse of a child, K.S.A. 21-3609, prior to its repeal, or K.S.A. 21-5602, and amendments thereto;

"(q) whether a parent is residing with an individual who is subject to registration requirements of the Kansas offender registration act, K.S.A. 22–4901 et seq., and amendments thereto, or any similar act in any other state, or under military or federal law; and

"(r) whether a parent is residing with an individual who has been convicted of abuse of a child, K.S.A. 21-3609, prior to its repeal, or K.S.A. 2014 Supp. 21-5602, and amendments thereto."

Neither infidelity nor fault is one of the specifically enumerated factors set out in K.S.A. 2014 Supp. 23-3203. The Kansas Supreme Court has instructed courts that

14

"[m]arital misconduct such as adultery is a pertinent factor to be considered in a divorce proceeding in determining which parent should be awarded custody of the parties' children but it is not in and of itself the controlling factor." *McClaren v. McClaren*, 214 Kan. 217, 219-20, 519 P.2d 720 (1974); see also *Matter of Marriage of Sommers*, 246 Kan. 652, 657, 792 P.2d 1005 (1990) ("[I]n all but extremely gross and rare situations, financial penalties are not to be imposed by a trial court on a party on the basis of fault.").

The record contradicts Bobby's claim that the district court put undue influence on his behavior. In approximately 700 pages of transcripts, Bobby's affair was brought up by Danielle once, by the attorneys twice, by Danielle's therapist once, by Bobby once and by the court three times. The first time the court mentioned his affair, the court was asking if Bobby's affair had caused the "whole mess." The second time, the court asked Bobby if he had felt any repercussions based on his affair, including the relationship between him and his parents. The third time the court brought it up, the court asked if Bobby was in a relationship. When Bobby's attorney objected, the court responded that the information was relevant to the extent that Bobby's being in a relationship would affect the children. Additionally, the district court acknowledged its duty to consider the best interests of the children and also recognized its difficult decision in this particular case due to the shortcomings of *both* parties.

Considering the record as a whole, Bobby has failed to establish that the district court abused its discretion by placing too much weight on his infidelity. See *McClaren*, 214 Kan. at 219.

Bobby also argues the district court placed too much weight on Danielle's constitutional right to travel when it engaged in a balancing test to determine what arrangement would best serve the needs of this family.

15

A parent's right to travel is also not one of the specifically enumerated factors in K.S.A. 2014 Supp. 23-3203. However, K.S.A. 2014 Supp. 23-3222(c) governs the relocation of children. Under subsection (c), "[a] change of the residence or removal of a child as described in subsection (a) may be considered a material change in circumstances which justifies modification of a prior order." When determining whether to allow a parent to travel, the district court

"shall consider all factors the court deems appropriate including, but not limited to: (1) The effect of the move on the best interests of the child; (2) the effect of the move on any party having rights granted under this article; and (3) the increased cost the move will impose on any party seeking to exercise rights granted under this article." K.S.A. 2014 Supp. 23-3222(c).

The district court acknowledged it needed to consider "all appropriate factors, including but not limited to: the effect of the move on the best interests of the children; the effect of the move on the person seeking custody rights; [and] the increased costs the move will impose on any person seeking to exercise custody rights." The court focused on Danielle's desire to be surrounded by family and to separate herself physically and emotionally from Bobby. The court acknowledged the move increased the difficulty for Bobby, but it ultimately determined that allowing Danielle and the children to remain in Nebraska was in the best interests of the children.

Here, the district court considered the proper legal standard. After hearing the testimony and considering all the evidence, the court determined that allowing Danielle to remain in Nebraska with the children was proper. The court noted Danielle's location only added 2 hours of driving time in a 14-day period to each parent, the 9 day/5 day block reduced day care time and allowed Danielle to implement the treatment programs for the children. Everyone involved in this case acknowledged that having the parents live 2 hours apart complicated the situation. But this was an emotionally charged situation fraught with fighting. The court seemed most interested in the services available

16

to the children and the amount of time they would have to spend in daycare, not Bobby's indiscretion or Danielle's right to move home to her family. Bobby has not established that it was an abuse of discretion to allow Danielle the opportunity to put some distance between herself and Bobby surrounded by the comfort of her hometown and family.

Bobby next claims the final custody order was tainted by the ex parte temporary orders upon which they were based. Bobby claims the district court erred in issuing its original temporary custody orders because: (1) Danielle failed to disclose a parenting plan providing for every weekend parenting time for Bobby, (2) Danielle failed to mention housing options near the marital home, and (3) Danielle's original domestic relations affidavit was not verified, in violation of Uniform District Court Rule 139 and Rule 23 of the Court Rules of the District Court—22nd Judicial District.

Under K.S.A. 2014 Supp. 23-3212, a district court may issue temporary orders. Subsection (b) allows a court to address temporary legal custody or residence of the child, allocations of parental rights and responsibilities pertaining the child's health, education, and welfare, and a parenting time schedule. K.S.A. 2014 Supp. 23-3212. "A parent seeking a temporary order in which matters of child custody, residency, or parenting time are included shall file a proposed temporary parenting plan contemporaneous with any request for issuance of such temporary orders." K.S.A. 2014 Supp. 23-3212(c). A parent may move for amendment of a temporary parenting plan, and the court may order amendment to the temporary parenting plan, if the amendment is in the best interest of the child. K.S.A. 2014 Supp. 23-3212(f).

On July 17, 2013, Daniele filed her petition for divorce. However, it appears she did not include a temporary parenting plan contemporaneous with the petition. See K.S.A. 2014 Supp. 23-3212(c). Despite this procedural misstep, the district court entered its ex parte temporary orders in which it granted Danielle temporary custody and gave Bobby parenting time on every other weekend.

17

On October 9, 2013, Bobby filed a motion to set aside the temporary orders. He cited numerous errors, including the lack of notice of the divorce filing, parenting time contrary to the best interests of the children, errors in the child support calculation, Danielle's unilateral decision making regarding medical care of the children, and Danielle's unilateral decision to relocate on a permanent basis. In response, the district court modified its orders, gave Bobby more parenting time, and reduced his child support obligation.

On appeal, Bobby argues he and Danielle had reached a temporary parenting plan that gave him parenting time every weekend, which Danielle did not honor in her petition for divorce. Bobby also argues that Danielle's original domestic relations affidavit was not verified in violation of Uniform District Court Rule 139 and Rule 23 of the Court Rules of the District Court—22nd Judicial District, and therefore the district court erroneously entered a temporary order based on an unverified application.

However, we do not have jurisdiction to consider an appeal of a temporary order. A temporary custody order is not a final order for the purposes of jurisdiction. See K.S.A. 60-2102(a)(4) (An individual may appeal to the Court of Appeals as a matter of right any "final decision.").

Here, the district court's ex parte temporary orders explicitly informed the parties they could apply for a modification of the orders. Bobby took advantage of his ability to challenge the ex parte temporary orders but failed to raise these issues below. So Bobby raises most of these issues for the first time on appeal. Although Bobby fails to argue an exception to the general rule that appellate courts do not consider issues for the first time on appeal, due to the nature of the liberty interest at stake—the interest of parents in the care, custody, and control of their children—we should consider the issues. See *In re*

*A.E.S.*, 48 Kan. App. 2d 761, 767, 298 P.3d 386 (2013) (citing *Troxel v. Granville*, 530 U.S. 57, 63, 120 S. Ct. 2054, 147 L. Ed. 2d 49 [2000]).

We must determine if the district court abused its discretion when it issued its final custody order. We should only reverse the district court if its decision was based on a factual or legal error, or when no reasonable person would agree with the district court. See *Critchfield*, 293 Kan. at 292. "[A]n appellate court should only look to evidence supporting the decision of the trial court and determine if there was an abuse of discretion." *In re Marriage of Whipp*, 265 Kan. 500, 502, 962 P.2d 1058 (1998).

Bobby claims the erroneous temporary orders somehow tainted the final orders. We disagree. Even if the district court did not hold Danielle to the procedural requirement initially, the court's final order clearly followed the proper legal standard it was to apply when it made the final custody determinations. Bobby does not suggest the court's factual findings (other than the finding that Danielle's move was justified, which, for reasons discussed above is supported by substantial evidence) are not supported by substantial competent evidence either. And Bobby acknowledged that Danielle was a great mother to the children. Based on the needs of the children, Danielle's involvement in their services, and the flexibility of her schedule to work only when Bobby had the children, it cannot be said that no reasonable person would have agreed with the court's final custody order.

Even if the initial ex parte temporary order was issued in error, any error can be rendered harmless, because the record reveals the district court independently determined the block schedule for parenting time was in the best interests of the children when it issued its final custody order. *State v. Ward*, 292 Kan. 541, 552-65, 256 P.3d 801 (2011) *cert. denied* 132 S. Ct. 1594 (2012) (An error that does "not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome", is harmless.).

Here, the district court faced a difficult decision but found the block parenting time schedule was in the best interests of the children. Bobby has not met his burden to establish that the court abused its discretion in continuing this arrangement. We affirm the final custody order.

Bobby also challenges the district court's order awarding primary residential custody to Danielle on two fronts: (1) the court failed to make adequate findings of fact and conclusions of law regarding the parents' ability to work with each other under K.S.A. 2014 Supp. 23-3203(f); and (2) the court abused its discretion when it awarded Danielle primary residential custody. Each will be addressed in turn.

First, we must consider whether the district court's findings are supported by adequate findings. Specifically, Bobby argues the court failed to consider K.S.A. 2014 Supp. 23-3203(h) (willingness and ability of each parent to respect and appreciate bond between child and other parent and allow for continuing relationship between child and other parent) when it awarded Danielle primary residential custody.

Supreme Court Rule 165 (2014 Kan. Ct. R. Annot. 272) places on the district court the primary duty to provide adequate findings and conclusions on the record of the court's decision on contested matters. A party, however, must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal. Such objections necessarily give the district court an opportunity to correct any alleged inadequacies. See *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). When no such objection is made, an appellate court can presume the district court found all facts necessary to support its judgment. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012). K.S.A. 2014 Supp. 60-252(b) also provides a party the opportunity to file a motion requesting a district court make additional findings after it issued its ruling.

20

In this case, Bobby filed a motion requesting the district court make additional findings. Bobby argued the court's findings did not support the finding that the children should be relocated to Nebraska.

Bobby challenges the district court's failure to make findings specific to K.S.A. 2014 Supp. 23-3203(h), which allows a court to consider the "willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent" when determining child custody and residency.

The district court clearly considered K.S.A. 2014 Supp. 23-3203(h) as it referred to it in its order. Bobby argues the court's findings do not support awarding primary residential custody to Danielle, suggesting that had the court made findings explicit to K.S.A. 2014 Supp. 23-3203(h), it would have awarded primary residential custody to him. But the court was well aware of Danielle's exaggeration of Bobby's flaws. The conciliator testified that Danielle tried to make Bobby look bad. Bobby's attorney impeached Danielle's allegations of anger on cross-examination. The court chastised Danielle and her attorney for immature behavior. The court found "that her claims of Bobby's anger are exaggerated." The court also recognized that allowing Danielle to relocate would remove herself "physically and emotionally" from the past 6 to 8 years of her life. The court is not required to make findings regarding each factor under K.S.A. 2014 Supp. 23-3203; it is merely required to consider "all relevant factors, including, but not limited to" the factors expressly set out. We see no flaw in the district court's findings.

Additionally, K.S.A. 2014 Supp. 23-3222 governs changing a child's residence. Under subsection (c), the district court must consider: "(1) The effect of the move on the best interests of the child; (2) the effect of the move on any party having rights granted

21

under this article; and (3) the increased cost the move will impose on any party seeking to exercise rights granted under this article."

Bobby does not mention this provision in his challenge to the district court's findings. But the court clearly considered K.S.A. 2014 Supp. 23-3222(c) factors as it also listed them in its custody order. Before awarding Danielle primary residential custody, the court considered the effects of that decision and determined it was in the best interests of the children to reside with Danielle, who was able to stay home with them, who was involved in their social services, and who was surrounded by her family.

Under K.S.A. 2014 Supp. 23-3207, the district court is vested with the responsibility of making a determination as to the residency of children in the children's best interests. An appellate court reviews a residency determination under an abuse of discretion standard. *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011).

We find no abuse of discretion in the district court's residency order. Danielle was able to work only when Bobby had the children thus reducing the time they spent in daycare. Danielle was also active and involved in the services both children received. If the court had ordered equal time, the children would not qualify for services from either state, putting them at a distinct disadvantage. The court's order was a reasonable solution to a complicated situation.

Finally, Bobby argues the district court committed reversible error when it failed to assign a $32 or $33 income tax adjustment to him. He claims the court failed to run an income tax worksheet or consider the head of household deduction, or review the consequences of assigning each parent one dependent.

Parental child support obligations in a divorce action are governed by statute and guidelines established by our Supreme Court. See generally K.S.A. 2014 Supp. 23-3001

22

*et seq.* (governing court's obligation and authority to make provisions for child support); K.S.A. 2014 Supp. 20-165 (mandating Supreme Court to adopt rules establishing child support guidelines); Kansas Child Support Guidelines (KCSG), Administrative Order No. 261 (2014 Kan. Ct. R. Annot. 127-213).

A district court's child support award is generally reviewed for abuse of discretion. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014). An abuse of discretion occurs when no reasonable person would agree with the district court or if the district court premises its decision on a factual or legal error. See *Critchfield*, 293 Kan. at 292.

The KCSG instructs the district court. Section IV.E.3. governs income tax considerations. (2014 Kan. Ct. R. Annot. 144.) Under IV.E.3., when the "parties do not agree to share the actual economic benefits of the dependency exemption for a minor child . . . the court shall consider the actual economic effect to both parties and may adjust the child support." (2014 Kan. Ct. R. Annot. 144.) Regarding the head of household adjustment, the KCSG provides that the parent who files as head of household might see a tax benefit. The rules then instruct district courts that "[i]f the court decides it is appropriate to share the tax benefits of this deduction, the noncustodial parent's credit should not exceed his/her proportionate share of the combined income." (2014 Kan. Ct. R. Annot. 188.)

Bobby argues that *Heller v. Depew*, No. 102,593, 2010 WL 3488810 (Kan. App. 2010) (unpublished opinion), stands for the proposition that a district court must consider the economic effects of tax adjustment and the failure to at least state its reasoning for not assigning the adjustment is reversible error. However, *Heller* is distinguishable. In that case, the district court had refused to even consider tax consequences and opposing counsel misstated the law to the court. The *Heller* court reversed the child support order and remanded with directions that the district court consider the actual effect of the tax

consequences before entering an appropriate child support order. 2010 WL 3488810, at *4.

Bobby's child support worksheet indicated he was entitled to a $33 credit for income tax considerations. Danielle submitted four child support worksheets accounting for varying daycare and health insurance situations. On each, Danielle indicated Bobby was entitled to a $32 credit for income tax considerations. However, the child support worksheet adopted by the court does not provide for a credit for income tax considerations.

Supreme Court Rule 165 (2014 Kan. Ct. R. Annot. 272) places on district courts the primary duty to provide adequate findings on the record. A party, however, must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal. Such objections necessarily give the district court an opportunity to correct any alleged inadequacies. See *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). When no objection is made to the district court's inadequate findings, an appellate court can presume the district court found all facts necessary to support its judgment. See *O'Brien*, 294 Kan. at 361.

Bobby did not object to the sufficiency of the findings regarding the child support award. Therefore, we will presume the district court considered the actual economic effects of the tax consequences as required by KCSG, Section IV.E.3 and determined it was not appropriate to share the benefits as being equal as the court found the tax consequences for Bobby and Danielle were nearly the same.

The district court's final orders regarding custody, residency, and child support are affirmed.

Affirmed.