NOT DESIGNATED FOR PUBLICATION

No. 111,998

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

HUSSEIN HAMDEH,
*Appellee*,

and

HALA HAMDEH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed November 10, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Jennifer M. Hill*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.

Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

*Per Curiam*: In this appeal from the district court's orders in a divorce action, respondent Hala Hamdeh challenges the court's overall property division, the denial of her request for attorney fees, and the award to her of only 1 year of spousal maintenance. We find no abuse of discretion on the part of the district court and therefore affirm as to all matters with the exception of its refusal to grant Hala attorney fees and expenses. That issue is remanded for further hearing consistent with our instructions.

1

Petitioner Hussein Hamdeh sought divorce from his wife, Hala, in November 2010. The divorce petition stated that the couple was married on July 28, 2003, that he and Hala had one child in 2004, and alleged grounds of incompatibility. Hussein attached a prenuptial agreement signed July 10, 2003, to the petition.

In Hala's answer, she denied that she married Hussein in July 2003 and asserted that she married him on January 9, 2003, in Tripoli, Lebanon. Hala stated that they simply secured a Kansas marriage license in July 2003. She contended that the agreement attached to the petition was actually a postnuptial agreement, not a prenuptial agreement, and that it was void, due in part to her inability to understand English. She counterclaimed and requested temporary and permanent spousal maintenance, stating she was not employable due to her language issues. In support of Hala's answer and counterclaim, she attached Arabic and English versions of a Lebanese marriage certificate indicating that a marriage between the parties occurred on January 7, 2003, and was registered on January 9, 2003.

The parties resolved child custody matters and then presented evidence regarding the enforceability of two purported prenuptial agreements at a bench trial. At the beginning of the trial, Hussein conceded that the actual date of marriage was January 2003, argued that a marriage contract signed at that time in Lebanon acted as a prenuptial agreement, and contended that a document that he had Hala sign once she arrived in Kansas was also an enforceable prenuptial agreement.

In an order following the trial on the marriage date, the district court found that Hussein and Hala were married in January 2003 and that the purported prenuptial agreements were unconscionable and unenforceable when executed. The court also found

in its February 9, 2012, order that Hala was "incapable of working outside the home due to her limited ability to speak and understand English."

A bench trial on property division and attorney fees was later conducted before a different judge than the one who had ruled on the marriage date and the invalidity of the prenuptial agreements. Once again the parties heavily litigated Hala's proficiency in the English language. At this trial, Sally Jones testified that she was the director of the intensive English language program at Wichita State University. Jones stated that Hala completed an Intermediate II course in English, and someone at that level would generally not be proficient, being a level four out of seven in Jones' terms. Hala did not enroll in any classes after August 2011.

Hussein testified that he married Hala in Lebanon in January 2003 and was able to bring her to the United States on a visa in June or July 2003. He owned a home at the time of the marriage, and Hala did not contribute to the cost of the house. He sold this house for $141,000 in order to buy a new home later in 2003. This house was purchased for $208,500, through a $160,000 mortgage loan and a $51,817.05 cash down payment. Hussein set aside the remaining proceeds from the sale of the first house and later used them to pay down the debt on the new house, as demonstrated by a check issued to the lender in 2009 for $90,000. The county appraiser determined the 2013 value of the new home to be $217,300. Hussein also emptied a $29,000 E-Trade account, which he owned prior to the marriage, to pay down the new residence. In total, Hussein stated that he paid $170,000 toward the house from premarital assets.

Hussein also testified that his gross annual salary as a professor at Wichita State was $86,374. He also reviewed his tax returns from 2007 through 2012 with the court, each of which reflected his salary from the university as well as some income from consulting. He testified about several abuse allegations Hala had filed against his adult sons, which were ultimately dismissed, and noted he paid for legal counsel to enable his

3

sons to defend against the allegations. Hussein also incurred legal fees for counsel to defend himself against abuse accusations made by Hala.

Hussein testified that he gave Hala $5,000 at the time the divorce was filed as partial fulfillment of the $10,000 owed under the marriage contract signed in Lebanon, had paid another $5,000 since, and had paid spousal maintenance during the 27 months the divorce had been pending. He contended that Hala had reneged on the contract, and he wanted credit for what he had paid applied to any future spousal maintenance award. He also read aloud a 2013 e-mail exchange between Hala and a teacher regarding their joint work in improving their daughter's schoolwork, which he believed demonstrated that Hala was sufficiently proficient in English to function in the United States.

On cross-examination, Hussein acknowledged filing a disciplinary complaint against Hala's counsel, which was dismissed, but which had the effect of delaying trial proceedings. Hussein also testified that Quadruple H was a company owned by his son, Yusef Hamdeh, but Hussein denied any involvement with the company. Hussein stated that it was possible that he had received compensation from Quadruple H, but he could not provide any additional information, including whether Quadruple H was still active.

With regard to the marital home, Hussein testified that the mortgage was paid off in 2009 with proceeds from the sale of the first home he owned prior to the time he was married to Hala. He indicated that he initially set aside the extra money for other activities, but, when they did not progress, he decided to pay off the house.

Carla Breckenridge testified that she was the third grade teacher for the daughter of the parties in 2012. Breckenridge stated that she was not able to easily communicate with Hala after March 2012, as she would either have to speak very slowly or would have the child translate. Another child's mother had to interpret for Breckenridge and Hala at a

4

school musical event. Breckenridge testified that Hussein had approached her and asked if Hala was proficient in English, and Breckenridge told him that she was not.

Naji Kasem, Hala's brother, testified that he facilitated "90 to 95 percent of the communication" between counsel and Hala because counsel did not speak Arabic. Based on repeated conversations with Hala during her marriage, Kasem testified that Hussein never took any steps to help enroll her in English language courses.

Kasem reviewed years of accounting evidence related to Hussein's taxes, banking, and investments, and identified a $19,000 withdrawal from a Quadruple H account in 2008 signed by Hussein. Other documents Kasem identified appeared to show that Hussein had previously deposited funds into the Quadruple H account from an online trading account. Shortly after the $19,000 withdrawal from Quadruple H, Hussein had obtained two certificates of deposit (CDs) totaling $19,000. Bank records showed multiple transfers from the Quadruple H account to Hussein's account in 2009. Kasem contended that the funds ultimately used to pay off the mortgage on the marital home came from consulting work done by Hussein, which were channeled through Quadruple H to Hussein, converted into CDs and later cashed out. Most of the payments for the consulting work were made out to Samir Hamdeh, Hussein's son, before being deposited.

Hala testified that Hussein had promised to enroll her in English language courses, and she confirmed that she was seeking at least 10 years of spousal maintenance. She indicated that she had incurred over $130,000 in attorney fees through the course of the divorce litigation, almost all of which had been paid, and her brother paid for an expert witness utilized during the trial over the marriage date and prenuptial agreements.

On cross-examination, Hala stated that, since March 2012, she studied English once a week at church but could not afford to enroll in formal classes. She also stated that she did not directly help her daughter with her homework, which was in English, but that

she arranged for her daughter to talk online with Kasem. Hala denied speaking with either the guardian ad litem or her daughter's counselor in English since 2012, indicated that she did not use text messaging, and stated that in order to fill out a couple of school forms in English she wrote what she was instructed to by Hussein.

Leah Gagne testified that she had been appointed as guardian ad litem earlier in the case. She testified that she maintained e-mail contact with Hala after March 2012, and she also had a 4-hour meeting with both parties in June 2012. In terms of English skills, Gagne stated that Hala appeared to be able to function during the long meeting and did not have an interpreter, although Gagne noted that only a portion of the meeting involved Hala. Gagne noted that Hala did look puzzled at certain times, but a change of phrase helped her to understand. Most of the interaction Hala had in the meeting was with a therapist, and Gagne stated that she believed that Hala understood the therapist's statements and was able to ask and respond to questions in English. Gagne described Hala's English as "broken" and "rudimentary."

Gagne also testified that she had received copies of lengthy e-mails that Hala had sent to the therapist, and the e-mails were in English. Gagne had recommended that the court not order a psychological evaluation of Hala, basing her decision on cultural differences, and she stated that she recommended a translator be provided if the test went forward in order to ensure a precise understanding of the questions and increase the odds of reliable test results.

On cross-examination, Gagne testified that she did not take any notes at the June 2012 meeting. She could not say that Hala's English language skills significantly improved between March and June 2012. Gagne never spoke with Hala on the phone; she communicated with her primarily through e-mail, and Kasem told Gagne over the phone in February 2013 that Hala would send him what she wanted to communicate in Arabic and he would translate it into English for her. Gagne verified that she had no special

6

training as a linguist, and she confirmed that Hala used a translator throughout the depositions in the case.

With respect to attorney fees, Hussein argued that the issue was not preserved in the court's ruling following the last trial, so no fees up to that date were at issue. He contended that Hala caused the litigation to extend needlessly by accusing him of domestic violence and because of obstructive actions by her brother. For these reasons, Hussein asked the court to not require either party to pay the other's legal fees, with the exception of certain costs related to the domestic violence allegation.

In response, Hala first argued that the court did not have the authority to order her to pay attorney fees from proceedings that were collateral to the divorce. Second, she contended that Hussein caused her notable additional legal fees by not promptly or correctly paying spousal support as ordered. She requested payment of attorney fees for each stage of the litigation, including custody, the dispute over the date of marriage, and expert witnesses. Hala asserted that justice and equity required Hussein be held responsible for her costs in a divorce proceeding he initiated; for disputing a false marriage date that he insisted upon; for her defense against false prenuptial agreements; for her costs in seeking enforcement of orders; and her expenses to fight Hussein's obfuscation of his assets and income.

The district court filed a journal entry and a written decision of judgment and divorce decree. The journal entry established Hussein's child support obligations, which are not contested on appeal. The court ordered 12 additional months of spousal maintenance for Hala at $1,000 a month. In the written decision, the court noted eight statutory factors it considered with respect to spousal maintenance and established separate paragraphs in its decision for each factor. Significantly, with respect to present and prospective earning capacities, the court noted that Hussein was 58 years old at the time the divorce commenced and pondered whether he would work past the traditional

7

retirement age of 65. The court also observed that Hala had little to no ability to speak English at the time of the May 2012 order, but also found that, although she had seemingly legitimately used an interpreter in court since that time, former guardian ad litem Leah Gagne testified that she could communicate effectively with Hala in English. The court indicated that Hala had not made any effort after May 2012 to improve her English skills. The court rhetorically asked, "[H]ow long is [Hala] allowed to claim that the language barrier prevents her from working?" The court noted that she was otherwise able-bodied and had taken an English class in 2011, in which her proficiency was rated a "4 out of 7."

The district court divided several retirement and investment accounts between the parties, but it did not deem any potential interest Hussein had in Quadruple H to be an asset subject to division in the order. The court concluded that Hala had failed to show by a preponderance of the evidence that any such interest existed and indicated that any valuation of the interest would be speculative due to a lack of evidence. The court valued the marital home at $89,900 after deducting the $141,000 value of the prior residence, to which Hala had contributed nothing, from the 2010 market value of the marital home. The court declined to divide the property because Hussein had paid for it mostly with premarital assets and the marriage was "relatively short."

The court also declined to award either party attorney fees, concluding that each party contributed to the extended duration of the litigation. The court noted that Hussein had extended the proceedings by trying to enforce an unfair prenuptial agreement and by filing an ethics complaint against opposing counsel in 2012, while also noting that Hala had drawn out the process by alleging that Hussein's income was more than the easily verifiable salary he received as a professor. Accordingly, the court did not find that justice or equity required attorney fees for either party.

Hala subsequently filed a motion to alter or amend the court's decision. First, she challenged the denial of attorney fees, particularly for the period running from November 4, 2010, to May 11, 2012, as she contended that those fees were incurred solely as a result of Hussein's wrongful efforts to deny the true date of their marriage and enforce prenuptial agreements that were either wrongfully obtained or otherwise illegitimate and unenforceable. Hala noted that the first judge in the case had previously found that Hussein had misled her into signing a prenuptial agreement after they were already married, and she contended that the court should award a fee in the amount of $57,814.64, which was the cost attributable to litigating against Hussein's wrongful claims. Hala also denied having engaged in any wrongful conduct that delayed the divorce litigation and argued that the court erred by not finding that Hussein had a business interest in Quadruple H, which she characterized as a "sham entity" created to mask Hussein's true income.

In her motion, Hala also argued that no evidence beyond Hussein's self-serving testimony supported the court's conclusion that Hussein paid off the marital home mortgage with premarital funds. Hala also requested an additional 18 months' maintenance, arguing that such time was needed in light of market conditions, her language skills, and obsolete job training. She claimed that she had begun taking English classes at a church in 2012, pointing to testimony to support that claim, and also contended that Gagne's testimony was neither reliable nor appropriate, as she was removed as guardian ad litem at Hala's request, she was not impartial, she was paid to testify, and Hala was not permitted to present rebuttal evidence. Moreover, Hala argued that she had presented evidence from her daughter's teacher that was based on a host of encounters, as opposed to the single encounter with Gagne, and that testimony illustrated her continuing struggles with English.

Hussein responded to the motion, first arguing that it was untimely. Second, he contended that Hala could have presented all of the information in the motion before or at trial, but failed to do so. Finally, Hussein urged the court to deny each of Hala's claims on the merits.

The district court declined to dismiss the motion on procedural grounds but explained that its earlier decision with respect to attorney fees provided ample justification. The court briefly discussed Hala's claim regarding Hussein's alleged interest in Quadruple H, noting that it was "the most troubling [aspect] to the Court" out of all the issues raised in the motion, but that Hala failed to prove by a preponderance of the evidence that Hussein had an interest in the business and, if he had an interest, what the value of the interest was at the time. The court relied on the reasoning given in its previous decision for denying the claims related to the value of the marital home, spousal maintenance, and other property matters.

Hala has timely appealed.

ANALYSIS

*Property award and statutory factors*

Hala first argues that the district court abused its discretion in consideration of several of the statutory factors for marital property division under K.S.A. 2015 Supp. 23-2802(c). Specifically, she contends that several of the district court's findings with respect to the parties' present and prospective earning capabilities were not supported by substantial competent evidence, particularly with regard to Hussein's possible retirement and Hala's ability to speak English. She asserts that the court also went outside the evidence in its discussion of her family ties and obligations, erred when weighing the impact of the limited spousal maintenance award, and abused its discretion when

10

appearing to justify the property division in part by the fact that it considerably exceeded the amount she would have received under the prenuptial agreements that the court found to be unenforceable.

In his response, Hussein first notes that Hala failed to cite any evidence in the record to support her assertion that no evidence supported the district court's statement that Hussein would possibly be retiring soon. Hussein also observes that Gagne testified about Hala's ability to comprehend and speak English during a 4-hour meeting, merely offering nonexpert evidence to rebut Hala's claim that she could not work due to the language barrier.

District courts are vested with broad discretion in adjusting the property rights and financial affairs of parties involved in a divorce action. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). The district court must make "a just and reasonable division of [the marital] property." K.S.A. 2015 Supp. 23-2802(c). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, and, if reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006). Because Kansas is an equitable division state, divorce courts are not required to make an equal split of all property acquired during the marriage. *In re Marriage of Rodriguez*, 266 Kan. 347, 352-53, 969 P.2d 880 (1998). Although the ultimate division of property must be just and reasonable, it need not be equal. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010).

When undertaking the division of property, Kansas law provides that the divorce court shall consider:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by
> the parties; (4) their present and future earning capacities; (5) the time, source and

11

manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2015 Supp. 23-2802(c).

Hala has not demonstrated any error in the district court's consideration of the statutory property division factors. As we will discuss later, the district court did not err by permitting Gagne to testify, did not give too much weight to her testimony, and did not ground its property division decisions in Hala's English competence. While there was no evidence offered that Hussein planned to retire any time soon, the court's speculation about possible retirement was directly tied to its consideration of his age and future earning potential, two of the statutory factors. Importantly, the court did only speculate about his retirement and did not make an actual finding that this was the case, instead merely musing on the issue as a qualification of its finding that Hussein's future earning potential exceeded Hala's earning potential.

Additionally, we find that substantial competent evidence supported the district court's conclusion that Hala's language skills did not justify a maximum spousal maintenance award. Gagne testified about her ability to function during a lengthy meeting without an interpreter, and no evidence indicated that Hala struggled during this meeting. Additionally, the court downplayed the significance of Hala's language skills, ultimately noting that her failure to learn English could not justify a substantial 10-year spousal maintenance award at the end of a 7 1/2-year marriage and years of maintenance payments made during the pendency of the litigation.

With respect to her family relationships and obligations, Hala had testified that she could not afford to register for any more English classes but the better part of her $130,000 legal fees were paid, suggesting that her family paid the fees, just as her brother paid for an expert witness in the first trial. The court may well have ruled differently if

12

the marriage had lasted longer, or if the record evidence did not also suggest that she enjoyed significant financial support from her family and had studied English for a period of time but failed to do so in the later term of the divorce. Unquestionably, a maintenance award lower than that which she sought negatively impacts her, but this factor and whatever language barrier she may face in finding employment do not overwhelm the evidence regarding the length of the marriage, the manner, source, and acquisition of property, and family ties and obligations, certainly not to the point that the district court's decision is inequitable. See K.S.A. 2015 Supp. 23-2802(c).

In short, Hala has not shown that the district court's consideration of the disputed spousal maintenance factors was clearly erroneous or that its orders were bereft of evidence supporting its conclusions. The court's review of those factors, combined with consideration of the other statutory factors, adequately supports the district court's conclusions. See *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 715.

*Marital home evaluation*

Hala next argues that the district court abused its discretion in its determination of the portion of the marital home subject to division, as only Hussein's self-serving testimony supported the claim that premarital assets were used to pay off all but $54,000 of the mortgage. Instead, she argues evidence demonstrated that Hussein used his premarital investment account to pay for a trip to Mecca and to give money to his son and son-in-law. Because of this, Hala contends the court's conclusion that the entire sale cost of the premarital home should be deducted from the value of the martial home before dividing the property was not supported by evidence.

Hussein responds that Hala's accounting evidence does not matter, as none of it undermines the fact that he used premarital assets to pay off the mortgage on the marital home regardless of what accounts were used. He argues there could not have been any

intermingling of these funds with marital assets because Hala did not contribute any marital assets. Additionally, he charges that Hala failed to support her argument with legal citations or adequate references to the record, thereby failing to properly raise the issue before this court.

The district court closely examined the evidence in order to make a ruling regarding the marital home which focused on the time, source, and manner of its acquisition. Principally, the court relied on Hussein's testimony that all of the sale proceeds from the premarital home went into the marital home. The only contrary evidence consisted of inferences from bank accounts presented by Hala's brother, which were based on incomplete records that did not clearly contradict Hussein's claim to have put the entire $141,000 from the sale of the first home into the new home over the course of several years. Hussein's testimony provided substantial competent evidence to support the district court's conclusion that Hussein used the $141,000 from the sale of the first home to pay down the mortgage on the marital home, and none of the evidence from Hala's brother clearly undermined Hussein's testimony. Although reasonable minds could disagree about the precise valuation, Hala has not shown that the district court's conclusion was arbitrary and therefore this court cannot disturb this portion of the district court's property decision.

*Prior evidentiary rulings and factual findings*

Hala next argues that the district court judge who entered the property division order ignored factual findings made by the judge who presided over the first trial with respect to Hala's English language abilities and employability. She further contends that the district court should not have heard Gagne's testimony, that her English language abilities should not preclude her from getting maintenance, and that the court's analysis failed to respect the earlier findings.

14

In response, Hussein first contends that Hala has failed to support her argument with citations to relevant law and the record, thus failing to properly brief the issue. Additionally, he argues that the district court did not ignore its own prior rulings, as its later determinations only pertained to Hala's English language abilities following the earlier order, not preceding it. For this reason, Hussein believes there could not have been any violation of the earlier order, and her argument is meritless.

Under the doctrine of law of the case, "[t]his court is firmly committed to the rule that the trial court cannot be required to either again review and pass upon what it has already determined or ignore its previous ruling." *Hodge v. Freeman*, 187 Kan. 650, 654, 359 P.2d 845 (1961). "[O]nce an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice." *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998). But law of the case doctrine is "a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so." 263 Kan. 629, Syl. ¶ 2; see *Investcorp v. Simpson Investment Co.*, 277 Kan. 445, 454, 85 P.3d 1140 (2003).

Like res judicata and collateral estoppel, law of the case doctrine has a preclusionary effect. *Collier*, 263 Kan. at 633-34. But it also differs in important respects.

> "'The doctrine of the law of the case is similar to other preclusionary doctrines such as collateral estoppel, res judicata and stare decisis. While all of the doctrines act to prevent a party from raising issues that have already been decided, differences do exist between them.
>
> "'The law of the case and collateral estoppel are different in that collateral estoppel prevents the relitigation of issues in successive suits between the same parties; the law of the case prevents relitigation of the same issues within successive stages of the *same* suit. Res judicata differs from the law of the case in that it settles the rights of the parties once the judgment is final. The law of the case does not settle rights; it only settles

the law to be applied in determining the rights of the parties. Also, many courts view res judicata as a rule of law, whereas the law of the case is merely a practice to guide the court.'" *Collier*, 263 Kan. at 634 (quoting Note, *McDonald's Corp. v. Hawkins and the "Law of the Case" Doctrine in Arkansas*, 50 Ark. L. Rev. 127, 130-31 [1997]).

The law of the case doctrine allows a court to avoid relitigation of an issue that has already been determined in an earlier stage of the lawsuit but before a final judgment has been reached. *Collier*, 263 Kan. at 634. Still, law of the case doctrine has been "sparingly appl[ied]" by this court. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 79, 150 P.3d 892 (2007).

Although Hala couches her argument in terms of res judicata, it would appear that the doctrine she seeks to apply is the law of the case doctrine, as she has been involved in a single continuous suit with Hussein, not successive suits. See *Collier*, 263 Kan. at 634. But there are significant differences between the first and second trials in this case which justified the second judge in not automatically adopting the first judge's determinations as the law of the case.

The district court's early factual findings following the first trial addressed Hala's English proficiency and employability through February 2012, and the second district court did not later make inconsistent findings. Instead, the court heard nonexpert testimony about Hala's apparent ability to effectively communicate in English during a lengthy meeting and in e-mail correspondence. Importantly, the court also noted that Hala previously took English classes but had failed to continue to improve her English proficiency. The court's focus was on her English abilities in the wake of the earlier ruling and did not touch on her skills prior to the effective date of the order. As such, whatever preclusive effect the earlier ruling might have had was not triggered, as the court's later ruling regarding Hala's more recent English skills and employability did not

contradict the earlier determination, and the court did not relitigate a previously established matter. See *Collier*, 263 Kan. at 634.

*Attorney fees*

Hala next argues that the district court erred by failing to award her the attorney fees she requested for the litigation related to fighting the prenuptial agreements, the enforcement of which the court later concluded would have been unconscionable, especially as the court also indicated that Hussein's attempt to enforce the agreements was coercive, fundamentally unfair, and deserving of an attorney fees award. The court then later seemed to suggest that any such deserved award was completely offset by Hala's failure in her effort to demonstrate that Hussein was concealing income and assets, even though neither Hussein nor the court suggested that her attempt to litigate this issue was at all inappropriate. In further justification for an award of fees, Hala recites her efforts in continually seeking motions to compel to obtain adequate discovery from Hussein. Hala contends that justice and equity both require that she be reimbursed because Hussein needlessly drove up the cost of litigation.

In response, Hussein asserts that Hala has failed to cite to places in the record illustrating his obstructive conduct in the course of the litigation, thereby failing to adequately raise the issue before this court. Additionally, he contends Hala has ignored the numerous instances the district court cited where she appeared to drive up his costs of litigating the divorce. As such, he argues that she failed to demonstrate an abuse of discretion or raise the issue in its entirety.

K.S.A. 2015 Supp. 23-2715 provides that costs and attorney fees may be awarded to either party in domestic matters "as justice and equity require." Pursuant to this statute, the district court is vested with wide discretion to determine both the amount and the recipient of an allowance of attorney fees. *Baker v. Baker*, 217 Kan. 319, 321, 537 P.2d

171 (1975). "Where the exercise of discretion is arbitrary and not judicial, and the judgment is inequitable, it will be set aside." *St. Clair v. St. Clair*, 211 Kan. 468, 499, 507 P.2d 206 (1973). "Attorney fees are traditionally 'awarded to a party to enable that person to assert marital rights that might not otherwise be protected.' [Citations omitted.]" *In re Marriage of Cray*, 18 Kan. App. 2d 15, 32, 846 P.2d 944 (1993), *rev'd in part and modified in part* 254 Kan. 376, 867 P.2d 291 (1994). In awarding attorney fees, a district court must consider the needs of one party and the other party's ability to pay. *Dunn v. Dunn*, 3 Kan. App. 2d 347, 350-51, 595 P.2d 349 (1979).

After careful consideration, we believe the district court abused its discretion in failing to award Hala attorney fees and expenses associated with proving the date of the marriage. Parties fight over many issues in divorce cases, but they usually do not fight about the correct date of the marriage. Here, Hussein caused protracted litigation over the date of the marriage for the purpose of attempting to enforce an alleged "prenuptial" agreement signed by the parties in June 2003 when, in fact, the parties were married on January 7, 2003. Then, in opening statements at the trial on the prenuptial agreement, Hussein's counsel admitted that the date of the marriage was January 7, 2003.

The record reflects that Hala incurred substantial attorney fees and expert witness fees in order to prove what Hussein knew all along, that the parties were married in Lebanon on January 7, 2003. Under these circumstances, "justice and equity" require Hussein to reimburse Hala for her reasonable attorney fees and expenses incurred as a result of the litigation over the date of the marriage. See K.S.A. 2015 Supp. 23-2715. Because of this, we must remand this case to the district court with instructions to hold an evidentiary hearing to determine the reasonable amount of Hala's attorney fees and expenses incurred as a result of the litigation over the date of the marriage and to award the fees and expenses to Hala.

*Spousal maintenance*

Hala argues that the district court erred by failing to award the maximum spousal support allowed by law. In this vein, she first contends it was improper for the district court to consider factors similar to those used for property division in making its spousal maintenance award because those factors are absent from the statute dealing with spousal maintenance. Additionally, since no Kansas case directly supports the conclusion that a party's English language skills can preclude maintenance, she believes it was error for the district court to consider her English proficiency in determining maintenance.

Hala contends that the district court should have based its analysis on the statutory language, focusing on the parties' needs and overall financial condition, and that Kansas law places the ability of one spouse to pay the other as the paramount consideration. She thus concludes that the district court conducted an erroneous analysis and ignored evidence of Hussein's hidden income and assets. These improper considerations, she argues, require reversal of the maintenance award.

Hussein responds that the district court properly considered the property division alongside its maintenance order, and Hala has not identified a single instance where the district court ignored Kansas law in this respect. He contends that Hala failed to adequately brief the issue to the court, but, even on the merits, has not demonstrated any abuse of discretion.

A trial court's award of maintenance must be "fair, just and equitable under all the circumstances." K.S.A. 2015 Supp. 23-2902(a). This court reviews the district court's maintenance order for abuse of discretion. *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 706-07. An appellant bears the burden of establishing any abuse. *Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467 (2009).

19

"Kansas appellate courts have instructed that many of the statutory considerations relating to the division of property in divorce actions also should be considered in the determination of maintenance." *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 709. "A trial court should consider: the age of the parties; their present and prospective earning capacities; the parties' needs; the time, source, and manner of acquisition of property; family ties and obligations; and the parties' overall financial situation. [Citation omitted.]" 43 Kan. App. 2d at 709-10.

Hala's argument with respect to spousal maintenance is problematic in several respects. First, although the factors discussed by the district court are not included in the spousal maintenance statute, caselaw has established that the district court is to consider those same factors in determining maintenance. See *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 709.

In this case, the court noted, among other things, that the marriage lasted 7 1/2 years, the divorce has been in litigation since 2010, Hala enjoyed considerable financial assistance from her family, and she had years to build upon her earlier studies of English in order to improve her employability. Her apparent inability to speak English did not itself preclude further maintenance, which Hussein had been paying since shortly after filing for divorce, but was a single factor among several that supported the court's decision to limit spousal maintenance to 1 additional year. Each of the court's conclusions in consideration of the factors was supported by substantial competent evidence, and Hala has not demonstrated that the conclusions were arbitrary or fanciful. Likewise, there is no showing that the court's decision was arbitrary, capricious, or unsupported by substantial competent evidence. *In re Marriage of Bradley*, 282 Kan. at 7; see *Harsch*, 288 Kan. at 293.

*Leah Gagne testimony*

Hala's next point of attack on the district court's decision is that the court erred by considering evidence from Gagne that predated the court's February 2012 order regarding Hala's speaking ability. She complains that the former guardian ad litem should not have been allowed to testify at all regarding Hala's proficiency with English. Hala believes the record does not support the judge's conclusion that she could communicate effectively after the first court's order. She also asserts that Gagne's testimony regarding earlier communications was irrelevant, and the district court impermissibly relied heavily on Gagne's statements in its rulings. Hala believes the second judge's very heavy reliance on Gagne's testimony indicates that this issue should not be dismissed as merely an attack on the weight of the evidence.

Hussein agrees with Hala that her argument goes to the weight of Gagne's testimony and not its admissibility and responds that it is not the job of the Court of Appeals to reweigh evidence. He contends that Hala has not challenged the court's actual conclusion and, therefore, has not presented any actual issue for this court to review.

"[T]he admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence is abuse of discretion. [Citation omitted.]" *Garrett v. Read*, 278 Kan. 662, 667, 102 P.3d 436 (2004). Appellate courts do not reweigh evidence or judge the credibility of witnesses. *In re Estate of Farr*, 274 Kan. 51, 68, 49 P.3d 415 (2002).

Hala concedes that her argument is typically treated as an attack on the weight of Gagne's evidence rather than its admissibility. We are not persuaded by her attempt to convince us to overturn the district court's evaluation of the evidence. We note that the court considered Gagne's testimony in conjunction with the extent of her English instruction and her use of an interpreter throughout the proceedings. As such, to the

21

extent this issue touches on the weight of Gagne's testimonial evidence, we decline to review the mental processes of the district court by reweighing the evidence. See *In re Estate of Farr*, 274 Kan. at 68. Additionally, when deciding that Hala's English skills did not justify the maximum spousal maintenance award, we observe that the district court also considered the amount of time she had available to learn English, the English classes she took, her age and physical abilities, and the number of years over which she had already received maintenance compared to the total duration of the marriage. The court did not abuse its discretion by considering Gagne's testimony, and Hala has failed to demonstrate that the testimony was inadmissible on any ground. See *Garrett*, 278 Kan. at 667.

*Ownership interest in Quadruple H*

Finally, Hala contends that the district court ignored "plain evidence" that Hussein owned, operated, and drew income from Quadruple H. She faults the district court for accepting unsupported evidence that Hussein's son Yusef owned the business, despite the fact that he was a college student who could not have performed the physics work of Quadruple H, and complains Hussein failed to refute evidence that he drew income from the entity. Hala contends this failure by the district court impacted its property division, spousal maintenance, and child support orders, and she argues that we should vacate and remand for a full accounting of Quadruple H's income and any other potential consulting income for Hussein.

In response, Hussein argues that the district court properly considered all evidence related to Quadruple H and correctly determined that there was insufficient evidence to show that he had an interest in the enterprise or what that interest's value might be. He charges that Hala failed to meet her evidentiary burden before the district court and has not demonstrated an abuse of discretion on appeal. As with the property issues discussed above, this court reviews the district court's determination regarding Hussein's alleged

interest in Quadruple H for abuse of discretion. See *In re Marriage of Wherrell*, 274 Kan. at 986.

The evidence supporting Hala's claim that Hussein owned and drew income from Quadruple H did not demonstrate by a preponderance of the evidence that he was concealing income. Analysis of this issue is as difficult and troubling on appeal as it was for the district court, as some of the evidence does suggest that Hussein had an important role in Quadruple H, particularly his drawing money from a Quadruple H account. The remaining evidence regarding other deposits and withdrawals and who was actually performing the work for Quadruple H's clients requires speculation. Most of that evidence was provided in this case by Hala's brother, who provided the district court with his personal assessment of Quadruple H's business. None of the evidence established that it was more likely than not that Hussein was the actual owner of the entity rather than his son, who was listed on the entity documents. None of the accounting data demonstrated that Hussein was more likely than not channeling funds from consulting work through Quadruple H in order to mask the full extent of his income and assets. Considered in its entirety, which is the task undertaken by the district court, the accounting data presented at trial did not illustrate, by any measure, the value of Quadruple H or the value of Hussein's interest, if any, in Quadruple H. We find no persuasive evidence in the record which compels us to the conclusion that an order by the district court dividing up an interest in Quadruple H was needed as a matter of justice and equity. See K.S.A. 2015 Supp. 23-2802(c).

Contrary to Hala's apparent suggestion, it was not the district court's burden to establish sufficient evidence to demonstrate Hussein's involvement in Quadruple H, and Hala has not demonstrated that the district court's decision was an abuse of discretion requiring this court to remand the case to the district court in order to allow her a new opportunity to present evidence. As the district court noted, the evidence presented suggests that there may have been something more going on with Quadruple H than

Hussein admitted, but the evidence simply does not show by a preponderance of the evidence that Hussein did have an interest in the company or, most significantly, what the value of that interest was.

Affirmed in part, reversed in part, and remanded with directions.